[Argued October 24, 1892; decided December 19, 1892.]

## A. K. VELTEN v. MARGARET A. CARMACK ET EL.

[S. C. 31 Pac. Rep. 658.]

STATUTORY CONSTRUCTION — REMEDIAL LEGISLATION — RIGHTS OF MARRIED WOMEN.— Remedial statutes will be liberally construed. The legislation in Oregon on the subject of the rights and property of married women is of such a nature, and should receive a liberal interpretation.

SEPARATE PROPERTY OF MARRIED WOMEN.—A married woman may, under article XV., section 5, of the constitution of Oregon, sell her separate property, and with the proceeds buy other property, which will be held in the same manner: *Brummet* v. *Weaver*, 2 Or. 170, approved.

IDEM— PAROLE EVIDENCE.—Parole evidence is admissible to show that the property conveyed by a certain deed, reciting a money consideration,

was in fact a gift, and as such became the wife's separate property.   This evidence is admitted, not to contradict the deed, but to show whence the real consideration came, since the money mentioned may be treated as the original gift, and the land as having been bought therewith:   *Starr* v. *Hamilton,* Deady's Rep. 279;  *Brummet* v. *Weaver,* 2 Or. 170, approved.

Multnomah County :  LOYAL B. STEARNS, Judge.

Suit against Penumbra Kelly, sheriff, and Tatum & Bowen, judgment creditors of Margaret Carmack, to enjoin the enforcement of an execution against certain property of plaintiff, and to quiet title against Margaret Carmack and Tatum & Bowen.   The case was referred to F. D. Chamberlain, who reported in favor of plaintiff, and a decree was entered accordingly in the circuit court The defendants Tatum & Bowen appeal.   Affirmed.

*John H. Woodward ( Charles H. Woodward* on the brief), for Appellants.

*George H. Williams* and *U. S. Grant Marquam ( Charles E. S. Wood* on the brief), for Respondent.

This is a suit in equity to quiet title, and grows out of the following facts:   On October 3, 1882, one Robert Gilbert, the father of the defendant Margaret A. Carmack, was the owner in fee simple of the east half of the east half of the southwest quarter of section seventeen, in township one south, range two east, of the Willamette meridian, in Multnomah County, Oregon, containing forty acres, and of other real property; and being desirous of aiding his children, he and his wife, on that date, executed and acknowledged a warranty deed for the expressed consideration of $1,000, in which they purported to convey to their said daughter Margaret A. Carmack the real property above described, and at the same time the said Gilbert and wife executed like deeds to their children for other real property.   When the deed to the defendant Carmack had been so executed, Mr. Gilbert placed it in a trunk, intending at some future time to deliver the same to his said daughter Margaret; but she, without the

knowledge or consent of her father, took the deed from the trunk, and on August 21, 1883, placed the same on the records of said county, and thereafter exercised acts of ownership over said premises.   Soon after the deed had been filed for record her father became aware of the fact, but made no objection thereto, and has never since that time made any claim to said land.   No money was paid or intended to to be paid for said land, and said conveyance was intended as a gift by said Gilbert and wife to their said daughter.

On September 22, 1887, the appellants Tatum & Bowen commenced an action against said defendant Margaret A. Carmack *et al.* in the circuit court of said county to recover the sum of $1,337.20 and interest, on an account for goods sold and delivered.   It is conceded that said Margaret A. Carmack, for the purpose of hindering and delaying the appellants Tatum & Bowen in the collection of their said claim against her, tried to sell and dispose of said premises, and finally agreed to convey the same to one Joseph Burkhard for the sum of $1,600, and on the twenty-third day of September, 1887, she executed and delivered to him her warranty deed therefor ; that at said date, said Margaret A. Carmack was a married woman, and her husband, H. C. Carmack, was temporarily absent, and it was agreed that she should procure a deed from her said husband to said Burkhard and deliver it to him before any portion of the purchase price should be paid to her.   A quit-claim deed, reciting $1.00 as the consideration thereof, was prepared and sent to her husband. who executed it on September 23, 1887, and it was returned and delivered to Burkhard, who thereupon paid the purchase price over to said Margaret A. Carmack. Her deed was filed for record on the day of its execution, and the deed from her husband was filed for record September 27, 1887 ; and Burkhard, the purchaser, had no knowledge or notice of the claim of the appellants Tatum & Bowen, nor of Mrs. Carmack's desire to place said real property beyond the reach of her said creditors.   The

action of Tatum & Bowen matured into a judgment against said Margaret A. Carmack on October 28, 1887, for $1,346.10 and costs. The respondent Velten, who was plaintiff below, is in the possession of the southeast quarter of the southeast quarter of the southwest quarter of said section, the same being ten acres of said larger tract, by a chain of warranty deeds from said Joseph Burkhard, for a valuable consideration, without knowledge of the purpose of said deeds from said Carmack and husband, and with only such notice as the records thereof gave.

Before the commencement of this suit, the appellants Tatum & Bowen had caused an execution to be issued on their said judgment, and had ordered the sheriff to levy upon the said real property of Velten to satisfy the same. This suit was brought for a perpetual injunction to enjoin and restrain said appellants Tatum & Bowen from proceeding to enforce the said execution against the said land, and to quiet plaintiff's title thereto. Plaintiff had a decree in the court below against all the defendants, declaring him the owner of said property in fee, and perpetually enjoining them from enforcing said execution against said land. The appellants Tatum & Bowen alone have appealed. Their contention is, that Margaret A. Carmack did not acquire said real property by gift, devise, or inheritance, and that being a married woman, her deed of September 23, 1887, did not convey to Joseph Burkhard, the grantee therein named, the title to the real property claimed by respondent; that her deed was void for the reason that her husband did not join her in the execution thereof.

Testimony was offered tending to show that while the deed from Gilbert and wife to Carmack expressed the consideration of $1,000, it was the intention of said Gilbert to give said land to said daughter. Appellants objected to the introduction of this testimony for the reason that it tended to vary the written contract of the parties.

MOORE, J. (after stating the facts).—At common law, the wife's legal identity was merged in that of her husband. The title to all her personal property vested in him by the act of marriage. He had the entire control of his wife's land during their joint lives, and in the event of issue born alive and his survivorship, he had a vested interest therein. He was entitled to ante-nuptial choses in action and her post-nuptial acquisitions. The wife could take property as grantee, but the husband could not convey to her, for the reason he would in theory be conveying to himself. He might devise his lands to her, since he must die before his will could take effect. The wife might have a will of her own, but she could not devise her real property. The husband could appropriate, use, and dispose of her chattels real, while the wife could neither sue nor be sued. She might in equity take a title by conveyance from her husband, but could not at common law. These rights she surrendered to her husband in consideration of his support and the payment of her ante-nuptial debts, together with the duty of answering for her torts. In case she outlived him, she had dower from his lands, while he, in case of survivorship and the birth of issue alive, had courtesy in her lands. She could convey her lands only by fine and recovery, a fictitious suit in which she was obliged to acknowledge to the judge before whom the case was tried, that she, without fear or coercion from her husband, acknowledged the fine, which custom has survived the reason therefor, and exists in many states to-day. Such was the rigor of the common law in regard to the property rights of the wife, and this doctrine was imported with that law to the shores of this continent; and wherever the common law prevails, is the law at the present time unless amended by statute.

In this state, the harsh doctrine of the common law has been, as applied to the property rights of married women, largely avoided by the constitution and further amended by subsequent legislation. The constitution,

section 5 of article XV., provides that "the property and pecuniary rights of every married woman, at the time of marriage, or afterward acquired by gift, devise, or inheritance, shall not be subject to the debts or contracts of the husband." Section 3003 of Hill's Code, passed October 15, 1854, provides that the husband and wife may, by their joint deed, convey the real property of the wife; and section 2992 of said Code, passed October 21, 1878, provides that the property and pecuniary rights of every married woman at the time of her marriage, or afterward acquired by gift, devise, or inheritance, shall not be subject to the debts or contracts of her husband, and she may manage, sell, convey, or devise the same by will, to the same extent and in the same manner that the husband can property belonging to him.

In *Rugh* v. *Ottenheimer*, 6 Or. 234, BOISE, J., in speaking of this clause of the constitution, says: "The members of the constitutional convention were mostly farmers, who had acquired land under the act of congress of September 27, 1850, granting land to settlers in Oregon. When these settlers were married people, the wife received from the government an equal share of the land with her husband, and, as there was a vast amount of this land the title to which was in the married women of the country, a large majority of the members of the convention enacted this clause, supposing that it would protect this property from the debts and contracts of the husband, and they did not think it capable of any other construction." In *Brummet* v. *Weaver*, 2 Or. 170, SHATTUCK, C. J., in defining such property as a married woman may acquire by gift, devise, or inheritance, under the constitution, says: "We think that these provisions of law must be so construed as to allow a married woman not only to hold property as separate property without the intervention of a trustee, but also to exchange one species of her property for another; and to authorize her to sell any part of her separate property and retain the

purchase money as her own ; or with it to buy other property, to be held by her in the same manner and for the same purpose."

In *Starr* v. *Hamilton*, Deady's Decisions, 279, Mr. Justice DEADY, who was the president of the constitutional convention, inquires into the source from which the consideration came with which a married woman acquired property. The members of the constitutional convention, when called to the bench as judges of this state, and of the federal court, have given to this clause of the constitution a liberal construction, on the theory that it was intended to be remedial in its application. It was never intended that the rule "that all statutes in derogation of the common law should be strictly construed," should be applied to the interpretation of this clause of the constitution and of the statutes in aid of the property rights of married women. Mr. Bishop, in his valuable work on Statutory Crimes, § 192, lays down the rule of interpretation as follows : "The law, for example, loves harmony and right; therefore it construes remedial statutes, made to amend some defects in the common law, liberally; it loves honesty and fair dealing, and so construes liberally statutes made to suppress frauds between individuals; and, generally, it employs a liberal interpretation for statutes which operate beneficially upon those whom they immediately concern. But enactments of the opposite character, taking away rights, or working forfeitures, or creating hardships of any kind, it construes strictly."

Applying these rules to the case at bar, could oral testimony be offered to show the real consideration of the deed from Gilbert to Carmack ? It is a universal rule, that even in equity a party claiming under a sealed document is bound by the general character of the consideration stated in the deed. Fraud, however, furnishes an exception to this rule, and under an allegation of this character, oral testimony may be received to prove the true consideration : Wharton, Law of Evidence, vol. 2, § 1046; Reed, Statute of Frauds, vol. 3, § 1071. So oral

testimony is admissible to show that a deed expressing a
money consideration was in fact an advancement. Such
testimony is offered not for the purpose of contradicting
the recitals of the deed, but to show, in a settlement
among the heirs, that one or more has already received
a certain amount by way of advancement, and should not
now have an equal share of the remainder of the estate :
*Bruce* v. *Slemp*, 82 Va. 352 ; *Meeker* v. *Meeker*, 16 Conn.
383 ; *Parks* v. *Parks*, 19 Md. 323. In *Brummet* v. *Weaver*,
*supra*, the court held that a married woman may exchange
one species of her property for another, and this would
impress upon it the same character that the original
property had possessed. By this rule, the source from
which a married woman had derived property may be
inquired into for the purpose of ascertaining the means
whereby the title to property had been acquired ; and
under that rule it would seem that it was competent to
show the real consideration for the conveyance, not for
the purpose of contradicting the deed, because there was
no controversy in relation to its genuineness, but for the
purpose of showing the source whence the real consider-
ation sprang. In the case at bar, Robert Gilbert intended
to give to his daughter this tract of land. He inserted a
consideration expressed in money, but that too came from
him. The real consideration, the one thousand dollars,
was a donation from him to his daughter ; and the same
having been expended or exchanged for the land, as
evidenced by the conveyance, makes the property ac-
quired no less a gift. It was competent under the rule
laid down in *Brummet* v. *Weaver*, *supra*, for the respondent
to show, in order to support his title, that the real con-
sideration was a gift, and that this could be traced
through all the transactions into which it had entered.

While it is true that a court should be governed by
the precedents of the past, it is not true that it should
close its eyes to the fact that an advanced civilization has
recognized woman as man's equal, and that the letter and
spirit of our legislation has placed her on a plane with
XXIII. OR.— 19.

her husband, and for that reason a court should not grope into the past for a rule, the reason for which has long since become extinct, but in the light of advanced reason interpret the statute in such a liberal manner as to carry into effect the wise provisions of the legislature in behalf of married women.

Viewing the transfer of this land as a gift within the meaning of the constitution and statute, it became the separate property of the defendant Margaret A. Carmack, which she could convey, subject to her husband's right of courtesy, without being joined in the deed by him; and when he executed his separate deed to the land he barred his right thereto, and the purchaser took what title Margaret A. Carmack then had, which title now being vested in the respondent, it follows that the decree of the court below must be affirmed.