RICHARD E. DORSEY, Conservator,

*v.*

NELSON WOLCOTT *et al.*

*Opinion filed June 18, 1898.*

1. UNDUE INFLUENCE—*when burden of proof is on donee to show absence of undue influence.* Where a person enfeebled in mind by disease or old age is so placed as to be subjected to the influence of another, and makes a voluntary disposition of his property to such party, the courts will require proof that the donor understood the nature of his act, and that it was not done through the donee's influence.

2. The court reviews the evidence in this case at length, and holds that the contract and deeds sought to be set aside, which were executed by an old man suffering from partial paralysis which affected his brain and rendered him totally helpless, and dependent upon the parties to whom the contract and deeds were given, were obtained through undue influence, at a time when the donor did not understand the nature of his acts.

APPEAL from the Circuit Court of Logan county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

This is a bill, filed at the September term, 1894, of the circuit court of Logan county by the appellant, Richard E. Dorsey, as conservator of Jehu Walker, a distracted person, for the purpose of setting aside certain deeds and a contract made by said Walker in his lifetime, upon the alleged ground that said deeds were procured by fraud and undue influence, and that, at the time of their execution, the said Jehu Walker was mentally incapable of executing the same. The defendants to the bill were one George Walker, and the appellees Nelson Wolcott, William Howell and Mary Best. Amendments were filed to the original bill, and subsequently a supplemental bill was filed. Answers were filed by the defendants to the original and amended bills and to the supplemental bill. Replications were filed to the answers. After the taking and introduction of testimony, a hearing was had. Upon the hearing, at the January term, 1896, the circuit court rendered a decree finding, that Jehu Walker was not mentally incapable of making contracts; that the contract mentioned in the bill between Jehu Walker and the appellee, Wolcott, was valid and binding; that the deed made by Jehu Walker to the appellee, Mary Best, was valid and binding; that the deed made to William Howell on January 25, 1893, of the south half of the east half of the south-east quarter of section 15, township 18 north, range 1 west of the third principal meridian, was void and should be canceled; that, as to the deed executed by Jehu Walker to the appellee, Howell, on August 4, 1892, con-

veying the south half of the east half of the north-east quarter of said section 15, which was sold by said Howell after it was deeded to him by said Walker, the said last named deed was ratified subsequently by said Walker, and that said Howell was entitled to the proceeds of said sale as against the complainant. The decree affirms the deed to Mary Best and the contract to Nelson Wolcott, and orders the deed to Howell, made on January 25, 1893, to be canceled as being void, and decrees that the complainant had no rights in the proceeds of the land sold by said Howell and invested in a residence in Macoupin county, Illinois. The decree further orders, that William Howell and George Walker should pay the costs of the proceeding, and that the bill be dismissed as to Nelson Wolcott and Mary Best.

The present appeal is prosecuted from the decree so rendered by the circuit court.

E. D. BLINN, for appellant.

T. T. BEACH, and A. G. JONES, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This record reveals a revolting story of imposition upon the infirmity of age and the helplessness of disease.

In May, 1892, Jehu Walker was an old man about seventy-nine years of age living in Logan county, where he had lived many years. At that time he owned, and had owned for many years, 160 acres of land which he cultivated as a farm and occupied as a homestead. He was a bachelor and lived alone.

On May 17, 1892, he had a stroke of paralysis. On November 23, 1893, he had a second stroke of paralysis. On April 11, 1894, a petition was filed for the appointment of a conservator of Jehu Walker. On May 10, 1894, upon the petition for such appointment, the jury re-

turned a verdict finding said Walker to be a distracted person, afflicted with softening of the brain and incapable of caring for, and having charge of, his property. On August 1, 1895, Jehu Walker died. He was a man without education, and could neither read nor write.

The stroke of paralysis, which he had in May, 1892, affected the left side of his face and body and deprived him of the use of his left arm and leg. After he was paralyzed he talked but little, and, when he talked, it was with great difficulty. He was unable to dress or undress himself. He had to be dressed and undressed by others. Nor was he able to eat without help; he had to be fed by others. He was unable to walk without help. After he was paralyzed in 1892 he never went anywhere without an attendant, and never did anything, in the way of business or otherwise, without being attended by some other person. Before he was paralyzed he was close and miserly in his habits, and strictly careful of his property interests. After he was paralyzed, he changed entirely in these respects, and was almost reckless in the manner in which he disposed of his property.

As soon as he was paralyzed, a brother of his, named Samuel Walker, was sent for from Macoupin county and came to Jehu Walker's farm in Logan county, where he staid one month, and then removed Jehu to Gillespie in Macoupin county, Illinois. At this time Jehu Walker was unable to walk. From the home of Samuel Walker he was taken to the house of the widow of a deceased brother, named Barbara Walker, the mother of George Walker, and the mother-in-law of William Howell hereinafter named. George Walker was a nephew of Jehu Walker, and the wife of Howell was his niece.

About July 27, 1892, George Walker took Jehu Walker back to his farm in Logan county. The 160 acres constituting the farm are described as the east half of the north-east quarter of section 15, etc., and the east half of the south-east quarter of said section 15. Almost im-

mediately upon the return of Jehu Walker to his farm in July, 1892, with his nephew, George Walker, to-wit: on July 30, 1892, the said George Walker obtained from his uncle, the said Jehu Walker, a deed conveying to him the south 40 acres of said farm, to-wit: the south half of the east half of the south-east quarter of said section 15. The consideration named in this deed was $500.00, and by its terms the grantor, Jehu Walker, reserved the use of the land during his lifetime. The land was then worth about $75.00 an acre. No consideration whatever was paid by George Walker for this conveyance, which was acknowledged by the grantor on July 30, 1892, and recorded on August 19, 1892. The testimony tends to show, that Jehu Walker was induced to make the deed upon the promise of George Walker to support him and care for him during the remainder of his life. In violation of this promise George Walker deserted his uncle soon after obtaining said deed, and, on August 27, 1892, sold the 40 acres, so conveyed to him, to certain bankers named Redmond & Lucas at Latham, Illinois, for $1000.00. In October, 1892, Jehu Walker bought the land back from Redmond & Lucas, and gave them $2200.00 for it.

The decree of the court below sets aside the deed to George Walker, and orders the same to be canceled of record. No appeal is taken by George Walker from this part of the decree, and its correctness is not in dispute here. Redmond & Lucas were not parties defendant to the bill in the court below, which did not seek to reach any portion of the money paid to them by Jehu Walker.

After obtaining the deed from Jehu Walker, and before he finally abandoned him, George Walker took Jehu Walker back from Logan county to Gillespie, in Macoupin county, to the house of William Howell, whose wife, as before stated, was a sister of George Walker. Jehu Walker remained with William Howell about a week. During this time, and on August 4, 1892, William Howell induced the said Jehu Walker to execute to him a deed, convey-

ing another 40 acres of said 160 acres, to-wit: the south
half of the east half of the north-east quarter of said sec-
tion 15. In this deed to Howell, Jehu Walker reserved
the use of the land during his lifetime. One hundred dol-
lars is named in the deed as the consideration thereof,
but no money was actually paid for the land by William
Howell. The testimony tends to show, that Jehu Walker
made this deed to Howell upon the promise of the latter
to take care of him during the remainder of his life.

After the execution of the deed to Howell on August 4,
1892, Howell took Jehu Walker back to his farm in Logan
county, arriving there on August 11, 1892.

On September 5, 1892, Howell sold the 40 acres, so
deeded to him, to Jacob A. Volle and John C. Volle for
the sum of $2800.00. At the same time, Jehu Walker ex-
ecuted a deed, conveying to the same parties 80 acres of
said 160 acres, to-wit: the east half of the north-east quar-
ter of said section, for a consideration, expressed in the
deed, of $3100.00. The latter deed included the 40 acres
previously deeded by Jehu Walker to William Howell on
August 4, 1892, and recites upon its face that, as to the
south half of the 80-acre tract, the deed was intended to
be only a quit-claim deed, and was intended only to con-
vey the life interest therein of the grantor, Jehu Walker.
In other words, Jehu Walker sold the north 40 acres of
his farm to the Volles, and at the same time quit-claimed
to them his life estate in the south 40 acres, previously
deeded to Howell. Jehu Walker received for such life
estate only the sum of $150.00. The $2800.00 which Wil-
liam Howell thus received from the sale of this 40 acres
he invested in a residence in the city of Gillespie, in
Macoupin county.

William Howell states that, when he came to Jehu
Walker's farm in August, 1892, Jehu Walker had $750.00
in money and a certificate of deposit for $5900.00 in a bank
called Scroggin's bank, making $6650.00 in all. If to this
amount be added the $3100.00, realized from the sale to

the Volles he had, early in September, 1892, the sum of
$9750.00. Of this amount the sum of $2200.00 appears
to have been made use of to buy back from the bankers,
Redmond & Lucas, the land deeded to George Walker,
leaving a balance of $7550.00. Of this sum of $7550.00
Jehu Walker paid over, as a loan to the appellee, Nelson
Wolcott, $5700.00. Wolcott was a farmer and neighbor
of Jehu Walker, and had been a neighbor for a number
of years. The payment of $5700.00 to Wolcott was made
about the first of September, 1892.

At this time Jehu Walker had remaining the south 80
acres of his farm, including the 40 acres which he had
bought back from Redmond & Lucas, the latter being
the south-east quarter of the south-east quarter of said
section 15. From this time up to July 11, 1893, William
Howell and his family lived with Jehu Walker on his
farm. On January 25, 1893, William Howell induced Jehu
Walker to convey to him the south-east quarter of the
south-east quarter of said section, being the same 40
acres, deeded back to Jehu Walker by the bankers, Red-
mond & Lucas. The sum of $100.00 was named as the
consideration in this second deed to Howell, but, as mat-
ter of fact, no money was actually paid by Howell to
Jehu Walker for the land so conveyed to him. The deed
reserves to the grantor a life estate in the land, and in it
William Howell agrees to take care of said Jehu Walker.

Jehu Walker had a sister, named Mary Best, who lived
in Texas, but who is shown by the testimony to have
been in Logan county a part of the time when the trans-
actions here referred to were taking place. On February
6, 1893, Jehu Walker, for a nominal consideration of one
dollar, conveyed to said Mary Best at the instance of the
said Howell the north half of the remaining 80 acres just
referred to, to-wit: the north-east quarter of the south-
east quarter of said section 15, being 40 acres. This deed
was made subject to the life estate of said Jehu Walker
in said last mentioned 40 acres. Shortly after its execu-

173—35

tion Mrs. Best made efforts to sell the land conveyed by it. After the execution of this last deed, Jehu Walker had disposed of all his farm, consisting of 160 acres, except a life estate in the 40 acres deeded to Mary Best and a life estate in the 40 acres last deeded to William Howell.

The testimony shows, that William Howell was a drinking man, and that his treatment of his uncle, Jehu Walker, was unkind. Owing to this treatment, Jehu Walker was forced to leave his own home on or about July 11, 1893, and went to the farm of the appellee, Nelson Wolcott, who owed him $5700.00. Shortly after Jehu Walker went to the home of Wolcott, to-wit: on July 24, 1893, Wolcott induced him to execute a certain contract, reciting that it is entered into between Jehu Walker, as party of the first part, and Nelson Wolcott, as party of the second part. This contract begins with the following recital: "Whereas said first party is partially paralyzed, and is unable to take care of himself," etc. By the terms of this contract Jehu Walker sells, conveys, assigns and delivers over to Nelson Wolcott all his goods, chattels, moneys, credits, notes, accounts, effects and personal property of every character, including money in bank, certificates of deposit, promissory notes, etc., and all rents due or to become due to Walker at any time in the future, and conveys to said Wolcott all the life interest, reserved in the two 40-acre tracts, deeded to Mary Best and William Howell, with the right to lease and use said 80 acres free of any interference. And, in consideration of said transfer by Walker to Wolcott of everything that Walker had left, Wolcott agrees to furnish Walker a comfortable home, and board and lodging, and clothing and washing, suitable to his station in life, during the remainder of his life. Wolcott also agrees therein, that Walker shall be decently interred in a certain cemetery in Logan county, and that a monument, not to exceed in cost $100.00, shall be erected over him. A few days after Jehu Walker came to the house of Nelson Wolcott, Wol-

cott took him over to the farm of one Arnfelt, who lived in the neighborhood, where Walker stayed until the latter part of October, 1893, a little less than four months. Wolcott made arrangements with Arnfelt to take care of Walker for the sum of $5.00 per week. Arnfelt declined to take any further care of him in the latter part of October, 1893, although offered by Wolcott as much as $7.00 per week, and thereupon Wolcott took Jehu Walker back to his own house, where he was stricken with paralysis a second time in November, 1893, and remained until the date of his death on August 1, 1895.

The decree of the court below sets aside the second deed made on January 25, 1893, to William Howell, upon the ground that William Howell agreed, as the consideration of that deed, to take care of Jehu Walker during his life, and failed to keep his agreement by treating Walker in such a way, that he was obliged to leave Howell in July, 1893, more than two years before his death. Cross-errors are assigned by William Howell, charging that this part of the decree below is erroneous. The decree is unquestionably correct upon the ground stated by the court below in the decree, independently of any question as to the mental incapacity of Walker, or as to any undue influence exercised over him. Howell did not keep his agreement to support and care for Jehu Walker during the remainder of his life after the execution of said deed on January 25, 1893.

It remains to be considered whether or not the decree is erroneous as to three other matters upon which it passes.

The appellant claims, that the deed, executed by Jehu Walker to William Howell on August 4, 1892, conveying the south half of the east half of the north-east quarter of. the section, was void upon the alleged ground, that Jehu Walker did not at that time have sufficient mental capacity to make the deed, and was induced to make it by the fraud and undue influence of William Howell; and that, therefore, William Howell, after he sold the said 40

acres to the Volles, held the proceeds of sale in trust for Jehu Walker, and that such trust should follow such proceeds when they became invested in the residence, bought by William Howell, and situated in said town of Gillespie. The appellant seeks to charge the property, purchased by Howell with the proceeds of the sale, with a trust in favor of Walker, or his estate. On the other hand, it is claimed by the appellee, Howell, that, when in September, 1892, Jehu Walker quit-claimed these 40 acres to the Volles, thereby selling his life interest in it, and permitting Howell to receive the proceeds of the sale, amounting to $2800.00, he, Walker, thereby ratified the deed, made by him on August 4, 1892. There was no ratification any more than there was a valid execution of the original deed, if Walker was mentally incapable of making the deeds and was induced to make them by fraud or undue influence. It is also charged by appellant, that the deed to Mary Best, and the contract with Wolcott, should be set aside upon the same grounds already alleged, to-wit: mental incapacity, and fraud, and undue influence.

After a careful examination of all the testimony in the record, we think, that the contention of the appellant in this case should be sustained. Jehu Walker was not in a condition to make the deeds and contract, which he was induced by these appellees to make. There is, as is usual in such cases as this, considerable conflict in the testimony, some of the witnesses giving it, as their opinion, that Walker had sufficient mental capacity to transact ordinary business, and to understand what he was doing, when he made these deeds and this contract. Other witnesses, who knew him best and saw him most frequently and most constantly, testify, that he did not have, after he was paralyzed in May, 1892, sufficient mental capacity to transact ordinary business. The latter class of testimony is, in our opinion, the more reliable. Jehu Walker, in addition to being an old man, was paralyzed on one

side, and was unable to dress or undress himself, or to feed himself, or to go anywhere, or do anything, without help. After he was paralyzed, his utterance became slow, and it was with difficulty that he could speak himself, or understand what others were saying to him. A physician, who testified in the case and who called to see him professionally in the summer of 1892, says that he was suffering from hemiplegia, which paralyzes half the body; that hemiplegia is universally produced by a brain affliction; that by it the brain is more or less affected; that, when he saw Walker, half of him was paralyzed; that he was eighty years old; that when he treated him it was for affliction of the brain, with little hope and no promise of doing any good; that he also treated him for embolism, which is an affliction of the brain. William Griffith, a farmer who lived in his neighborhood and had known him for many years, sold him a load of grain in the fall of 1892 for $7.50. On Wednesday thereafter Walker went to Griffith's house and paid him the $7.50, and on the same day left $7.50 with one Allen to pay the same debt. In other words, he gave Allen the money to pay Griffith, and on the same day paid Griffith himself, forgetting all about the first payment to Allen. The testimony of his neighbors is, that, before he was paralyzed in May, 1892, he was close and miserly and careful, and that after that there was an entire change in his conduct and in his mental operations. John Thompson, a farmer living near him, who had known him for nearly thirty years, said that half of him was paralyzed; that it was difficult for him to talk; that his mind was not as sound as it was before he had the stroke of paralysis; and that "he would do just what a man would advise him to do." This witness says: "I suppose, if Mr. Wolcott would have advised him to sell the land, he would have done it." Another neighbor, M. T. Vaughn, who had known him well for many years, says that he was not competent, after he was paralyzed in 1892, to make contracts and deeds and transact business

and take care of himself.   J. D. Simpson, another neigh-
bor who had known him a great many years, says that,
after he was paralyzed, it took two men to handle him;
that he had no use of one of his limbs and one of his arms,
and could not walk without help; and that, in his opinion,
he was not capable of transacting business.  This witness
also says, as do several other witnesses, that about this
time Jehu Walker expressed the fear that he was going
to be killed for his money.   Mrs. Lida Ewing, a very in-
telligent witness, who visited at his house, says that he
was not capable of taking care of his business; that "he
was no more capable of taking care of himself than an
infant."   Mrs. Ewing also says, that she "saw William
Howell shake his fist at the old man, and curse him sev-
eral times."   It will be impossible for us to analyze all
the testimony in this record.   The decided impression,
which it makes upon our minds, is that Jehu Walker
lacked such mental capacity as the law requires in the
execution of deeds and contracts in order to make them
valid.   We are also satisfied from the evidence, that, in
addition to his mental condition, he was clearly imposed
upon by the persons who obtained the execution of these
instruments from him.

Influence, to render a conveyance inoperative, must
be of such a nature as to deprive the grantor of his
free agency.  (*Burt* v. *Quisenberry*, 132 Ill. 385; *Francis* v.
*Wilkinson*, 147 id. 370).   In stripping himself of all his
property, both real and personal, as he is shown by this
record to have done, Jehu Walker did not act as a free
agent.   The mental capacity, which is required to make
a deed or contract valid, is that which exists at the time
of the execution of the deed or contract.   At that time
the grantor in the deed, or the maker of the contract,
must know and comprehend the transaction, in which he
is engaged. (*Francis* v. *Wilkinson, supra*).   The impression
made upon the mind, after reading the testimony in the
present record, is that Jehu Walker did not know and

comprehend the nature of these transactions. It is true, that old age and loss of memory do not, necessarily and of themselves, indicate a want of capacity to make a conveyance or contract. (*Burt* v. *Quisenberry, supra; Pooler* v. *Cristman*, 145 Ill. 405). But, here, there was something more than old age and loss of memory. There was paralysis, which not only affected the physical part of the man, but which also affected his brain. His mind was affected in such a way, that he was easily influenced by those about him to do what they desired. Being so helpless that he could not eat, or dress or undress himself, or walk without help, and needing constant attendance and assistance, he was in a state of mind, which made him dread the loss of such attendance and assistance. The fear of such loss rendered him an easy victim to those, who sought to make him believe, that they would give him the care and attention, which he so much needed, and was in so much fear of losing. Moreover, when he made these deeds and this contract, he was under the control and within the power of the parties, who induced him to execute them. At the time of executing them, the parties, who induced him to do so, were under an agreement with him to take care of him, and his movements were at the time controlled by them, or by parties whom they selected or employed. "Where a person enfeebled in mind by disease or old age is so placed as to be likely to be subjected to the influence of another, and makes a voluntary disposition of property in favor of that person, the courts require proof of the fact that the donor understood the nature of the act, and that it was not done through the influence of the donee." (*Sands* v. *Sands*, 112 Ill. 225). In *Sands* v. *Sands, supra*, it was said (p. 232): "Where a son, believing that his father, who had the 'blues,' was incompetent to manage his own affairs, took charge of them, the father passively submitting, and the son also induced the father to execute to him a deed of his farm and to transfer all his personal

property to him, it was held that the transaction was presumptively void, and it was incumbent on the son to show conclusive good faith.—*Jacox* v. *Jacox*, 40 Mich. 473."

The decree of the court below is affirmed, in so far as it sets aside the deed made on July 30, 1892, by Jehu Walker to George Walker, and in so far as it sets aside the deed made on January 25, 1893, to William Howell. But the decree is reversed, in so far as it sustains the deed made by Jehu Walker to William Howell on August 4, 1892, and the deed made by Jehu Walker to Mary Best February 6, 1893, and the contract executed between Jehu Walker and Nelson Wolcott on July 24, 1893. We hold the two deeds and the contract last mentioned to be invalid.

Accordingly the decree of the circuit court is reversed, and the cause is remanded to that court, with directions to enter a decree in accordance with the views herein expressed, and to order such an accounting as shall be just and equitable, charging the appellees with rents, if any, collected by them from said premises or any part thereof, and with the value of the use of such portions of said premises as have been occupied by them or either of them, charging the said Howell with the proceeds of the sale of the 40 acres deeded to him by Jehu Walker on August 4, 1892, or with any property in which said proceeds may have been invested, and charging the said Wolcott with such moneys, notes, securities and other property, as he may have received from the said Jehu Walker, with interest thereon; and crediting said Howell and said Wolcott with a reasonable compensation for such support, as they may have given to the said Jehu Walker, or such care as they may have taken of him, for the period, during which such support may have been given, or such care may have been taken.

*Reversed and remanded.*