Argued September 25, modified October 20, rehearing denied December 1, 1914.

## HOUSTON *v.* GREINER.

### (144 Pac. 133.)

**Evidence—Parol Evidence Affecting Writings—Consideration.**

1. Parol evidence is admissible to show that the true consideration of a deed was the agreement of the grantee to support the grantor and another.

[As to parol evidence to add to or vary a writing, see note in 56 Am. St. Rep. 659.]

**Cancellation of Instruments—Persons Entitled to Relief—Heir of Grantor.**

2. The grantee of a life estate, who is also a beneficiary in a contract of the grantor with the grantee of the remainder for maintenance, and is sole heir of the grantor, has a legal right to maintain suit against the grantee of the remainder to set aside the deed on the ground that the grantee of the remainder has failed to fulfill her contract for maintenance, which constituted the consideration for the deed.

**Cancellation of Instruments—Grounds—Failure of Consideration.**

3. Where one conveys real property in consideration that the grantee will support him during his natural life, and the grantee refuses to perform the contract, equity has not only jurisdiction, but the duty rests on it to set aside the conveyance.

**Deeds—Consideration—Evidence—Weight and Sufficiency.**

4. In a suit to set aside deed, evidence *held* to show that the grantee was to afford support and maintenance for her feeble grandfather, 90 years old, the plaintiff, and the paralytic mother of the grantee, 66 years old, during their joint lives and the life of the survivor, in consideration of the conveyance.

[As to when and how consideration must be expressed, see note in 60 Am. St. Rep. 432.]

**Cancellation of Instruments—Relief Awarded.**

5. Where a deed in consideration of support is set aside for failure of consideration, but the grantee has performed valuable services in part performance of the contract, a lien will be impressed upon the property for the value of such services.

From Linn: WILLIAM GALLOWAY, Judge.

This is a suit by Martha Houston against Orpha Greiner (formerly Orpha Henningsen) to set aside a deed to defendant to certain lands in Linn County.

From a decree in favor of plaintiff, defendant appeals. The facts are fully set forth in the opinion of the court.

MODIFIED.    REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Weatherford & Weatherford,* with an oral argument by *Mr. James K. Weatherford.*

For respondent there was a brief over the names of *Mr. B. H. Goldstein* and *Messrs. Joseph & Haney,* with an oral argument by *Mr. Goldstein.*

Department 2.    MR. JUSTICE MCNARY delivered the opinion of the court.

This is a bill in equity, having for its purpose the annulment of a deed executed by James Williams to defendant on April 27, 1910, conveying to her about 15 acres of land near the town of Scio, in Linn County. Plaintiff is the mother of defendant and the daughter of James Williams.   The substantial averments of the complaint are: That, on the date of the execution of the deed, James Williams was 90 years of age, greatly enfeebled, and mentally and physically incapacitated to transact business; that in 1908 plaintiff, who was living with and performing the household duties for James Williams, was stricken with paralysis, rendering her completely helpless; that, by reason of their misfortunes, James Williams then sought the assistance of defendant, who responded, and as a reward thereof obtained a deed to one acre of land; that, for a measure of time prior to the execution of the deed in controversy, defendant threatened to leave the home of James Williams and plaintiff, and, taking advantage of their utter helplessness, did importune and persuade James Williams to execute and deliver to her

73 Or.—20

a deed to all his property; that the deed was executed on the express promise and agreement that defendant would live with and properly care for James Williams and plaintiff during the lifetime of each. In the spring of 1911 it is recounted that defendant deliberately abandoned James Williams and plaintiff, and has since refused to perform her part of the agreement, which was the consideration for the execution of the deed.

Defendant in her answer relies upon two defenses, namely: A general denial and a separate defense to the effect that James Williams made the deed to defendant in consideration of services rendered and the further consideration of love and affection; and that the deed was made with the acquiescence of plaintiff. The reply denies all the allegations in the answer. The Circuit Court tried the cause and rendered a decree canceling the deed, and, from this action, defendant appeals.

Plaintiff's case is built upon three propositions: (1) Failure of consideration; (2) mental incapacity of the grantor, James Williams; (3) undue influence and coercion exercised by defendant over the mind of grantor. The instrument by which defendant obtained title to the premises contains upon its face the following clause:

"The grantee to hereafter pay all taxes assessed or levied on or against said premises. This conveyance is made with the express understanding and condition that the said James Williams, grantor herein, reserves the right of the free use, occupancy and control of said premises and to receive the rents and profits thereof during his natural life, and if my daughter Martha Houston should survive me then the conditions above mentioned shall extend to her during her natural life; that the possession of said premises shall not pass to the said Orpha Henningsen, grantee herein, until after

the death of the grantor herein, and after the death of my said daughter Martha Houston, to have and to hold the said premises, with their appurtenances, unto the said Orpha Henningsen, her heirs and assigns forever, after the death of the grantor herein, and after the death of the said Martha Houston."

The evidence in this case is voluminous; consequently we shall state generally our conclusions, and shall not attempt to support them by reference to a considerable part of the evidence. The decided impression which the testimony makes upon our minds is that James Williams, at the time he executed the conveyance, was guided by a mind sufficiently capacitated to render his acts voluntary. While bowed by the weight of years and the disabilities attendant thereon, James Williams yet possessed sufficient capacity and understanding to comprehend the nature and effect of the transaction under examination. Nor do we think the influence exerted by defendant was of that force and efficacy calculated to deprive the grantor of his free agency.

1. The residuary question then is: Was there a failure of consideration? It will be observed that the deed is silent with respect to the contract for support. The agreement being wholly in parol, this matters not, as the conveyance is not the contract. It is evidence of the consummation of some contract, but is not evidence of what the contract was. Therefore, it was competent for the court to admit testimony showing the true consideration that prompted James Williams to execute the deed to defendant: *Brown* v. *Cahalin,* 3 Or. 45; *Watson* v. *Smith,* 7 Or. 448; *Velten* v. *Carmack,* 23 Or. 282 (31 Pac. 658, 20 L. R. A. 101); *Puttman* v. *Haltey,* 24 Iowa, 425; *Greedy* v. *McGee,* 55 Iowa, 759 (8 N. W. 651).

2. Plaintiff is the sole heir of James Williams and a recipient of his bounty under the deed, to the extent of having a life estate in the property conveyed, as well as a beneficiary in the contract for maintenance, and therefore has a legal right to maintain the present suit: 13 Cyc. 699; Devlin, Deeds, § 807; *Walsh* v. *Harkey* (N. J.), 69 Atl. 726; *Bowen* v. *Bowen,* 18 Conn. 535; *Fluharty* v. *Fluharty,* 54 W. Va. 407 (46 S. E. 199). The testimony of plaintiff, who was of the age of 66 years and physically helpless by reason of a distressing affliction, is thus epitomized: That since 1884 she has resided continuously with her father, James Williams, whom she cared for until stricken with paralysis in 1907. Realizing her helpless condition, plaintiff called upon her daughter, the defendant, to make her home with them near Scio. That, agreeably to the request, defendant came to the home of these old people, where she remained and rendered services for one year. That, in payment therefor, James Williams conveyed to defendant one acre of land. That thereafter defendant absented herself in periods of several months, and finally refused to return, unless she received a contract for the remainder of the property owned by James Williams. That through the terror of being abandoned, and in response to continuous entreaties, James Williams in April, 1910, executed to defendant a deed to all his property. That the consideration of the deed was the promise and agreement upon the part of defendant to live continually with and care for James Williams and plaintiff during the remainder of their lives. In April of the following year, defendant, notwithstanding her agreement, deliberately deserted James Williams and plaintiff, and has at no time since respected the terms of the contract. That, prior to taking her departure, defendant

remarked that she had recorded the deed, and "that all of hell couldn't break it," and that she would return under no circumstances. In its important features, this testimony is corroborated by two married daughters of plaintiff. Significant is the testimony of Mr. Riley Shelton, who prepared the deed and was present at the time of its execution:

"I asked him [James Williams] some questions if he found everything to be all right—if it suited him? He said, 'Yes, it had come to a point where we have got to have help, and I have got confidence in humanity enough yet that she [defendant] will do what she says she will do.'"

Without doubt, this statement of the old gentleman that "defendant would do what she says she will do," referred to the contract for support which plaintiff asserts was made with and subsequently violated by defendant. As fortifying this belief, we observe the further statement of James Williams as related by Mr. Shelton:

"Q. Was anything said what she [defendant] was going to do for that deed?

"A. That she was going to care for him as long as she lived.

"Q. Was anything said about caring for her mother?

"A. Yes, there was nothing said as to time. The mother said that that would be a consideration to be considered thereafter."

The evidence is that the property has a value ranging between $2,500 and $3,000, and it cannot be supposed that James Williams would have vested the ultimate fee of the property in defendant as a gratuity, save the burden imposed by the annual payment of taxes, unless he had made a contract with defendant for the support of himself and his paralytic daughter.

Mr. Leffler, who also was present at the time of the preparation and execution of the deed, stated that no money passed between James Williams and defendant, and that the deed was executed in contemplation of the care of James Williams by defendant during his lifetime. Upon this point of the case, Dean Morris, a witness, in response to the question, "Did you know that she was to look after and care for her grandfather as consideration for that deed?" said, "She was supposed to."

Defendant, speaking upon her part of the case, says: That plaintiff, yielding to a stroke of paralysis in 1907, sought her assistance. That, going to the home of James Williams, she found three old people all seriously afflicted; the grandfather with age, her mother with paralysis, and an uncle with consumption. Confessedly defendant did her part in the amelioration of their suffering and in caring for their needs, remaining until March, 1908. In May following, and after the death of her uncle, she returned, and, from that time until her final abandonment, defendant remained at the home of James Williams and performed her part of the work. In the spring of 1908, James Williams conveyed to defendant an acre of land near the town of Scio, which was of a value in excess of $250, and which defendant testifies came about as follows:

"We were at the breakfast table one morning, and my grandfather said, 'You wanted to buy that acre of land, and think you could make a little off it'; and he said, 'To encourage you to stay and do for us, I will give you that acre of ground.'"

Justifying the execution of the deed to the land in question and the consideration moving therefor, defendant recounts that in 1910 she was working in Portland in the capacity of a saleswoman with wages of $10

per week, and did not feel that she would be doing right by herself to leave so lucrative a position until terms satisfactory were agreed to between herself and her grandfather. Defendant said:

"I asked him if he was willing to have things fixed in some way that he would be assured of a little something, and he said he was, so it was made out. I went to Scio and asked Mr. Shelton about fixing up some papers. I didn't know whether it would be put in the form of a deed or just how the papers would be drawn up, so he came down and talked it over with Grandpa."

On the following day, defendant left for Portland, resigned her position, and returned to the home of her grandfather, where she remained until April, 1911, when she finally left the home, assigning, as a reason therefor, the interposition of a family disturbance caused by her sister (Mrs. Blakely), and the refusal of plaintiff to accord her fair treatment or to speak to her. Defendant states positively that there was no contract ever entered into between James Williams and herself, having for its purpose the support of her grandfather or her mother, and that she told her grandfather and her mother that she would return at any time upon their request. It cannot be said that all was serene at the home of these people. One of the witnesses, Dean Morris, speaking of defendant's demeanor about the home, said that he had seen defendant wax angry and "cuss" her mother, saying that "She would do as she damn pleased."

3. We think the doctrine is firmly implanted in our jurisprudence that where one conveys his real property to another in consideration that such a person will support and maintain him during his natural life, and, after receiving such conveyance, the grantee refuses to perform his or her part of the contract, a court of

equity has not only the jurisdiction, but the duty rests upon it, to set aside such conveyance: *Thomas* v. *Thomas,* 24 Or. 251 (33 Pac. 565); *Ames* v. *Moore,* 54 Or. 274 (101 Pac. 769); *Kusch* v. *Kusch,* 143 Ill. 356 (32 N. E. 267); *Dorsey* v. *Wolcott,* 173 Ill. 539 (50 N. E. 1015); *McClelland* v. *McClelland,* 176 Ill. 83 (51 N. E. 559); *Fabrice* v. *Von der Brelie,* 190 Ill. 460 (60 N. E. 835); *Lane* v. *Lane,* 106 Ky. 530 (50 S. W. 857); *Lockwood* v. *Lockwood,* 124 Mich. 627 (83 N. W. 613); *Bogie* v. *Bogie,* 41 Wis. 219; *White* v. *Bailey,* 65 W. Va. 573 (64 S. E. 1019, 23 L. R. A. (N. S.) 234); *Fluharty* v. *Fluharty,* 54 W. Va. 407 (46 S. E. 199); *Bowen* v. *Bowen,* 18 Conn. 535; *Richter* v. *Richter,* 111 Ind. 456 (12 N. E. 698).

4. The testimony contained in the record, and the circumstances surrounding the transaction, lead us into the conviction that defendant was to afford support and maintenance for her feeble old grandfather of 90 years and her paralytic mother of 66 during their joint lives and the life of the survivor in consideration of the conveyance of the premises described in the complaint. Well knowing the age and condition of these old people and their physical infirmities at the time she took the conveyance, it was the duty of defendant to remain at their home and execute her part of the agreement, unless it became impossible to do so. The testimony of defendant does not show that condition of affairs which would legally excuse defendant from a performance of the agreement. On the other hand, from the whole testimony, it appears that defendant availed herself of the earliest opportunity to find an excuse for leaving.

5. Having abandoned those of her own blood, which by contract and natural impulse she should have cared for, leaves us no other alternative than to affirm the

decree·of the lower court in annulling the deed; but, in view of the fact that valuable services were rendered by defendant to those she was charged to support, a lien in favor of defendant is fastened upon the real property in the sum of $300, payable without interest within five months, neither party to recover costs.

MODIFIED.   REHEARING DENIED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BEAN and MR. JUSTICE EAKIN concur.