W. A. Graeper, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 46619.   Promulgated January 31, 1933.

*Robert T. Jacob, Esq.,* for the petitioner.
*Owen W. Swecker, Esq.,* for the respondent.

634

OPINION.

MARQUETTE: The respondent has charged the petitioner with having received, as owner, the entire amount of the sale price of the

Union Avenue Theatre Company's stock. We think the evidence does not justify that determination. It was not essential that petitioner's wife should have a stock certificate in her own name in order to own an interest in the stock. The reason for having the certificate covering her interest issued to petitioner has been explained. Under the laws of Oregon the separate property of a wife remains hers until she, by her own consent, parts with it. *Brummet* v. *Weaver*, 2 Oreg. 128; *Velton* v. *Carmack*, 23 Oreg. 287; 31 Pac. 658. In the present instance we have positive testimony that petitioner did not acquire his wife's interest in the stock of the Union Avenue Theatre Company. The certificates covering her interest, which were held by petitioner in his name, were held for her, on her authorization, as her agent. We conclude, therefore, that petitioner's wife owned a one-half interest in the stock; that upon its sale one-half the proceeds belonged to her, and that petitioner is taxable only upon one-half the net gain realized from the sale.

From August 1922 to September 1924 petitioner and his wife withdrew an aggregate of $20,405 from the funds of the Union Avenue Theatre Company. The respondent has treated that amount as a loan to petitioner and has included it in petitioner's income as a liquidating dividend received upon dissolution of the company in 1924. The record shows that petitioner and his wife were the sole owners of the company's stock during the period in question. It shows that petitioner's attorney was instructed to prepare the proper minutes authorizing such withdrawals as they were earned and that the amounts so withdrawn were reported as income for the years when received. Although the company's bookkeeper entered the amounts withdrawn as loans to petitioner, he did so without instructions and in the absence of any resolution by the corporate directors authorizing such loans.

A very similar situation arose in *Chattanooga Savings Bank* v. *Brewer*, 9 Fed. (2d) 982. Two individuals owned all the stock of a corporation and from time to time they made withdrawals from the company's surplus funds. The amounts withdrawn were entered on the company's books as accounts receivable. In holding that such amounts constituted dividends, rather than loans, the court said:

\* \* \* If these transactions constitute a loan or loans, then as a matter of fact the loan was made by Key to himself, which is, of course, an unthinkable thing, for a borrower necessarily implies a lender. \* \* \*

He and Mr. James owned this fund; it in all equity belonged to them. No other director had any real interest in it, nor did any creditor. I assume that it is the law that, "where the officers of a corporation distribute the profits among the stockholders, without authorization by either the directors or stockholders, the corporation may be bound by the acquiescence of all the stockholders; and where the rights of third persons are not thereby impaired, the

distribution of the profits of a corporation among its stockholders without any action on the part of the board of directors, but by consent or agreement of all the stockholders, is the equivalent of a dividend. Hence, an agreement between all the stockholders as to the manner in which the profits of the corporation shall be disposed of may be enforced, where the rights of creditors or of third persons dealing with the corporation are not thereby impaired." 14 Corpus Juris, p. 807, Par. 1227. * * *

That decision was affirmed by the Circuit Court of Appeals, 17 Fed. (2d) 79, that court saying:

A formal declaration of the dividend was not necessary. *Spencer* v. *Lowe*, (C. C. A.) 198 F. 691; *Smith* v. *Moore*, (C. C. A.) 199 F. 689. Any distribution by the company to its shareholders out of earnings or profits accumulated since February 28, 1913, was a dividend within the meaning of * * * the Revenue Act.

To like effect are the decisions in *L. W. Gunby Co.*, 3 B. T. A. 714; *Daniel Hunt, Sr.*, 6 B. T. A. 558; *United Tailors & Cleaners Co.*, 10 B. T. A. 172; *F. G. Lamb*, 14 B. T. A. 814.

The case before us is not distinguishable upon its facts from those cited above. In our opinion the amounts withdrawn from the company's funds by the petitioner and his wife constituted dividends, taxable as income for the years when received. It follows that the respondent erred in his determination that the total amount of the withdrawals was a liquidating dividend upon the company's dissolution.

The total amount withdrawn by petitioner and his wife in 1924 was $9,055, but only $8,718.48 of that amount was reported by them as income. Respondent allocated the entire amount received in proportion to the stockholdings of petitioner and his wife as shown by the corporate records, and increased petitioner's income subject to surtax in the amount of $444.11. Petitioner now accepts that determination and it is sustained.

In June, 1925, petitioner received a lump sum covering rental of a theatre building from September, 1924 to June 30, 1925. During that time petitioner was in the employ of his lessee, the Multnomah Theatres Corporation, and had in his hands sufficient of the company's funds to pay the rentals as they accrued. He did not do so, but paid over the funds on hand from time to time and received his salary and rentals by check from the corporation. The delay in paying rent for petitioner's theatre was due to delay in settling the terms of the lease. Petitioner filed his returns on the cash receipts basis and did not report any of the rentals as income for 1924. Respondent contends that as petitioner had on hand in 1924 sufficient funds of the lessee to cover the rentals for that year, the amount of such rentals should be included as part of his taxable income.

It does not appear that petitioner was authorized to pay his salary, or any rents due him, out of the corporation funds he might have in his possession. It does appear that the method followed in handling the funds and balancing accounts was prescribed by the company. The situation here differs from that in *James W. Elwell & Co.*, 14 B. T. A. 671, where by the terms of the contract of employment the taxpayer was authorized to and did draw the amount of its earned commissions from funds in its hands belonging to the employer. In *John A. Brander*, 3 B. T. A. 231, in considering the doctrine of the constructive receipt of income, we said:

When taxable income is consistently computed by a citizen on the basis of actual receipts, a method which the law expressly gives him the right to use, he is not to be defeated in his *bona fide* selection of this method by "construing" that to be received of which in truth he has not had the use and enjoyment. Constructive receipt is an artificial concept which must be sparingly applied, lest it become a means for taxing something other than income and thus violating the Constitution itself.

Although in that case we applied the constructive receipt doctrine, it was because the amount in controversy had been earned by Brander, was credited to him on the books of a corporation of which he was president, and could have been taken by him at any time. But that is not the situation in the present proceeding. The terms of the lease of petitioner's theatre were not settled during the taxable year. While he was entitled to rental for the building in 1924, the amount of that rental was not fully determined until the middle of the year 1925. And although petitioner had in his possession funds of the lessee sufficient to cover the amount of rentals for 1924, he held those funds as agent for the lessee. With respect to them he was a fiduciary and had no authority to apply the funds to the payment of rentals due him, even if at that time the amount of such rentals had been determined. In our opinion the respondent's determination of constructive receipt of rentals in 1924 was not justified, and the amount so added to petitioner's taxable income for that year should be eliminated.

In his income tax returns petitioner deducted 4 per cent of the cost of his Egyptian Theatre for depreciation. Respondent allowed only 3 per cent. Petitioner now claims 5 per cent for depreciation and obsolescence.

The building is of reenforced concrete construction and should last for many years. But its usefulness as a theatre will be much less than its physical life. Already the character of its patronage has deteriorated and several newer theatres have become its competitors. One witness, a real estate appraiser of experience, limits the useful life of the theatre in question to twenty years from its

date of construction. He also testified that any remodeling of the building for stores or offices would be impractical.

The respondent's allowance of 3 per cent deductions was apparently for depreciation only. We think there should be some allowance in respect of obsolescence. As the evidence before us indicates that the building will become useless in twenty years' time, in our opinion 5 per cent deductions, to cover both depreciation and obsolescence, should be allowed.

*Decision will be entered under Rule 50.*