TEXAS & P. RY. CO. v. RAILROAD COMMISSION OF LOUISIANA et al.

(Circuit Court of Appeals, Fifth Circuit. November 22, 1911.)

No. 2,174.

1. CARRIERS (§ 12*)—STATE REGULATION OF RATES—PRESUMPTION OF REASONABLENESS.

Rates to be charged by a railroad company, made by a state railroad commission, charged by law with the duty of fixing just and reasonable rates, are presumptively just and reasonable, although the statute does not expressly make them so, and the burden rests on the railroad company to prove to the contrary before it is entitled to an injunction to restrain their enforcement.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–20; Dec. Dig. § 12.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2.** CARRIERS (§ 12*)—STATE REGULATION OF RATES—SUIT TO ENJOIN ENFORCE-
MENT OF ORDER—SUFFICIENCY OF EVIDENCE.

In a suit by a railroad company to enjoin the enforcement of an order made by a state railroad commission, fixing rates on a single commodity, on the ground that such rates are unreasonably low and confiscatory, it is incumbent on complainant to show as near as may be the expense of rendering the particular service, and it is not sufficient to entitle complainant to the relief demanded to show that the percentage of reduction made by the order, if applied to all the traffic of the company, would reduce its income below what it is reasonably entitled to earn.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–20; Dec. Dig. § 12.*]

**3.** CARRIERS (§ 12*)—STATE REGULATION OF RATES—VALUATION OF PROPERTY.

The aggregate amount of outstanding stock and bonds of a railroad company is not a proper measure of the value of its property for rate-fixing purposes.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–20; Dec. Dig. § 12.*]

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

Suit in equity by the Texas & Pacific Railway Company against the Railroad Commission of Louisiana and others. Decree for defendants, and complainant appeals. Affirmed.

B. J. Mayer, T. J. Freeman, Chas. Payne Fenner, and W. B. Spencer, for appellant.

T. M. Miller and Walter Guion, for appellees.

Before McCORMICK and SHELBY, Circuit Judges, and NEWMAN, District Judge.

NEWMAN, District Judge. The bill was filed in this case by the Texas & Pacific Railway Company against the Railroad Commission of Louisiana and the members of the commission, in which it was sought to enjoin the enforcement by the Railroad Commission of what is called "Order No. 484," being an order fixing the rates on cotton seed and cotton seed products on the Texas & Pacific Railway in Louisiana.

The order in question is as follows:

"The commission having under consideration the record in this case, and after full hearing and investigation, finding the rates on cotton seed and cotton seed products on the Texas & Pacific Railway in Louisiana to be excessively high, as compared with the rates on other railways in Louisiana and in other states, and in some instances discriminative and unjust to certain localities, and believing the best interests of the general public will be subserved by the establishment of a uniform mileage rate on the commodities named, it is therefore ordered that the following rates be and are hereby established on cotton seed and cotton seed products to be transported between points on the said railway in Louisiana."

Then follow the rates fixed according to mileage.

The bill alleges that prior to the passing of Order No. 484 the Railroad Commission had declared the then existing tariff of rates to be fair, just, and reasonable. The bill further alleges that the tariff for the handling of commodities within the state of Louisiana has already been reduced as low as consistent with earning a fair return

for the operation of said road, and upon the capital invested in its property, and that the financial and physical conditions are such that it cannot afford to have its revenues reduced any further without seriously impairing the ability of the company to furnish the character of service demanded by the public in the operation of its property, and to meet its just fixed charges and operating expenses. The bill further alleges that the rates fixed by this order of the Railroad Commission are unreasonable and unjust; that the proposed tariff on cotton seed and cotton seed products "is unjust and unreasonable in itself, and is not justified by any condition either surrounding the movement of said tariff itself or by the financial or physical condition" of the railway company's property.

There was an answer to the bill, in which it is stated that they deny that prior to the time of the filing of Order No. 484 the railway company had in force and effect a tariff of rates on cotton seed and cotton seed products moving between points within the state of Louisiana that was just, fair, and reasonable, but, on the contrary, they aver that while said complainant did have, in effect, a tariff of rates on said articles prior to that date which had been filed with the defendant Railroad Commission, and adopted in the absence of any complaint, the said tariff, as said commission subsequently held, was unjust, unfair, excessive, and unreasonable. They deny that they have at any time, as was alleged in the bill, declared the existing tariff of rates before the promulgation of Order No. 484 to be fair, just, and reasonable, so that in dealing with this question in Order No. 457, while they declined to make any change at that time, they left the question to be determined as it might thereafter arise and as the situation might thereafter exist, and deny that the rates fixed by Order No. 484 are unfair, unjust, and unreasonable, or a rate that would not afford to said railway a reasonable return for the services rendered in transporting said commodities.

The case came to an issue and was referred to a special master, who appears to have had full hearings on the question, and filed a very complete and elaborate report. The master reached the following conclusions in the case:

"As I understand the evidence in the record and the law applicable, I am constrained to hold that the tariff of rates which the defendant Railroad Commission of Louisiana proposes to establish by its Order 484, attacked in this cause, is not fair and just and reasonable, because:

"First. The proposed tariff of rates would reduce the income of the complainant, though, even as it is, the income does not yield a reasonable return on the investment, and is otherwise insufficient to enable the complainant to perform fully and completely the duty which the law imposes upon a public carrier.

"Second. It imposes a greater charge for a 50-mile haul to a mill, outside of Gretna and New Orleans, than it does for a 100-mile haul to the latter towns.

"Third. The flat charge of three (3) cents per one hundred (100) pounds, in addition to the regular schedule, which mills outside of Gretna and New Orleans must pay, unless they ship a certain amount of product, is grossly excessive when added to the regular rate for distances of five, ten, fifteen miles and other short hauls, as compared with long hauls, since the per cent. of increase is far greater on the regular rate for short than for the longer hauls.

"Fourth. That, without any reason given in the record, the tariff discriminates in favor of the mills in New Orleans and Gretna by relieving them of the additional charge, which it imposes on all other mills, unless they comply with a more or less onerous obligation.

"For these reasons and all others given in the body of the report, it is my opinion that the prayer of the complainant should be granted."

There were exceptions to the master's report, and the same were heard in the Circuit Court. The opinion of Judge Foster, who presided in the case, which does not appear to have been reported is as follows:

"In this case the Texas & Pacific Railway Company filed its bill against the Railroad Commission of Louisiana for an injunction to restrain said commission from putting or continuing in force or effect a certain tariff of rates on cotton seed and cotton seed products, promulgated December 13, 1905, and to be effective February 1, 1906, designated as Order 484; and also for the cancellation and annulment of said order, on the grounds that said rates are unreasonable and unjust. In due course the matter was referred to a master, and it is now before me on exceptions to his report.

"A mass of testimony and other evidence was offered before the master, and his report shows painstaking care in considering it. He fixes the value of the entire Texas & Pacific system at $93,385,341.32, based on the amount of mortgage bonds $54,621,531, and outstanding capital stock $38,763,810, and he approximates the value per mile at $50,610.07. He also finds that complainant earns about 4.6 per cent. per annum on its total capitalization, and that the proposed rate would reduce complainant's income $23,775 a year. From these figures the master finds the rates complained of to be unreasonable and unjust. The master also held that the order of the Railroad Commission is entitled to no presumption whatever, but it is not clear what bearing he allowed this to have upon his findings. The defendants have excepted to the master's findings, and urge that the complainant has failed to show the cost or value of the particular service in question, and had produced no evidence of its investment in Louisiana. They also contend that the order of the Railroad Commission must be presumed to be valid until the contrary is shown. It appears that in 1904 complainant raised its rates materially on cotton seed from other points in Louisiana to New Orleans apparently to favor certain interior mills from which it also got the outhaul. It is conceded in argument that the average old rate was $1.50 and the complainant raised it to $3, while the schedule adopted by defendant puts it at $1.90.

"Complaint was made by certain shippers, and the commission instituted an inquiry, extending over a year, and holding several meetings, notifying both railroads and shippers to appear, and giving them ample opportunity to be heard. The commission found the rates of the Texas & Pacific Railway Company to be excessively high, as compared to the rates of other railroads in Louisiana, and in some other states, and in some instances discriminative and unjust, and on December 12, 1905, issued its order, herein complained of.

"The Railroad Commission of Louisiana is an elective body, created by the Constitution of 1898, and is charged, among other duties, with the fixing of just and reasonable railroad rates. By the same organic law any party aggrieved is given the right to apply to any court of competent jurisdiction at its domicile, fixed at Baton Rouge, for a revision of the commission's findings. The law creating the Railroad Commission of Louisiana does not, as is the case in some other states, make its findings and orders prima facie valid and correct, but I am convinced that in this case its Order 484 is entitled to the presumption that the rates therein fixed are reasonable and fair, and that the burden is clearly upon complainant to show to the contrary before it can be accorded the relief it seeks. M. L. & T. R. R. v. R. R. Commission of La., 18,031, Supreme Court of La. [(La.) 53 South. 890] decided November 4, 1910. R. R. Commission of Louisiana v. Cumberland T. & T. Co., 212 U. S. 414 [29 Sup. Ct. 357, 53 L. Ed. 577].

"As I understand the jurisprudence, it is well settled that in fixing of rates

by legislative authority on a single commodity the expenses of rendering the particular service must first be considered, and the rates so graded as to pay this cost and contribute a just proportion to a fair and reasonable return on the investment.. No effort was made by complainants to show the cost of the particular service in question, to wit, the· movement of cotton seed and cotton seed products. And complainant has also failed to show its investment in Louisiana, except to fix the amount of its outstanding stock and bonds, which should not be taken as conclusive proof. As against this, there is evidence tending to show that complainant has constructed a branch railroad in Louisiana from Cypress to Shreveport, a distance of 81 miles, at an average cost of $20.405 per mile; and it is shown that its road is returned for taxes at $10,000 per mile for its main line, and $5,000 per mile 'for its branches.

"I am well aware that in a great many instances it is well nigh impossible 'to show the cost of service. But on a commodity which moves in large quantities over comparatively short distances every season, and on a railroad as well managed as the Texas & Pacific is shown by the evidence to be, it ought not to be impracticable to do so with reasonable certainty. Nor should it be difficult to show the value of the road's investment in Louisiana. On the whole, I am convinced complainant has not made out its case and the master's conclusions are not supported by the evidence. The exceptions to the master's report will be sustained, and the bill dismissed without prejudice." ·

Judge Foster's action in sustaining the exceptions and refusing to sustain the master's report seems to be based on the following reasons:

[1] First. He found that the master erred in holding that the order of the Railroad Commission was not entitled to a presumption in favor of its correctness, and held that the order was entitled to the presumption that the rates therein fixed were reasonable and fair, and that the burden was upon the complainant to show the contrary before it could be afforded the relief sought. In this he was clearly correct. R. R. Commission of Louisiana v. Cumberland T. & T. Co., 212 U. S. 414, 29 Sup. Ct. 357, 53 L. Ed. 577. This error of the master's would of itself be sufficient to throw doubt on the correctness of his report. Where the question is as to whether a given tariff of rates is confiscatory, or at least unreasonable and unjust, and the solution depends upon the value of the property, its earning capacity, cost of service, and the like, there would be a very great difference in viewing the case as the master did, as one without any presumption whatever in its favor, and, on the other hand, as one fixed by a competent constitutional body with power to fix rates, and whose action is prima facie correct. In Cumberland T. & T. Co. Case, supra, it is held that "rates fixed by a body having jurisdiction, after investigation based on reports of the corporation rendering the service, are prima facie fair and valid, and the burden of proof is on the complainant that they are confiscatory or unreasonable."

[2] The next ground upon which Judge Foster bases his opinion that the master's conclusions are incorrect is the failure of the railway company to show, the case being one where rates are fixed on a single commodity, the expense of rendering the particular service, and if the rates fixed are such as to pay the costs of this service and contribute a just proportion to a fair and reasonable return on the investment. What the railway company appears mainly to rely upon

as to the loss to it from the commission's rate on cotton seed and cotton seed products is taken from the testimony of H. L. Redfield, who is assistant general freight agent of the company. The eighth interrogatory to Redfield is as follows:

"State whether or not you have had prepared a comparative statement showing the actual movement of cotton seed and cotton seed products under the present tariff of rates and the revenues derived therefrom for the year ending December 31, 1905, and the reduction that would have been made in said revenue had the commodity moved under the proposed commission tariff which is contested herein? If you state that you have had such a statement made out, then please attach same as a part of your answer to this question, marked 'Exhibit B,' also state fully how said statement is made up and what said statement shows?"

To the eighth interrogatory the witness answers:

"I have prepared from the records a statement showing the actual movement of the traffic on the rates now in effect. The amount of traffic moved under the rates now in effect for the year ending December 31, 1905, and the actual revenue derived from the movement of the traffic under the present rates, and also the revenue that would have been derived from the movement of the same under the commission's proposed rates. This statement shows that the total number of cars handled was 2,876; weight of commodity 113,593,061 pounds; revenue derived from the actual movement under tariff $114,619.47; the revenue that would have been derived under the proposed tariff of the Louisiana Commission $90,823.52; difference between revenue that was actually received and revenue under the proposed tariff, $23,795.95."

There is nothing in this, of course, to show the cost of the particular service. The argument seems to be that, applying the per cent. of reduction (20 per cent.) made by the commission order on cotton seed and cotton seed products to all the traffic of the railway company, it would mean a loss of something over $12,000,000. Conceding the fact of the 20 per cent. reduction in the income from the special commodity in question here, we do not think that the application to all the traffic, as proposed, is sound. In Minneapolis v. Railroad Co., 186 U. S. 257, 22 Sup. Ct. 900, 46 L. Ed. 1151, it is said in the opinion by Mr. Justice Brown:

"In exercising its power of supervising such rates the commission is not bound to reduce the rate upon all classes of freight, which may perhaps be reasonable, except as applied to a particular article; and if, upon examining the tariffs of a certain road, the commission is of opinion that the rate upon a particular article, or class of freight, is disproportionately or unreasonably high, it may reduce such rate, notwithstanding that it may be impossible for the company to determine with mathematical accuracy the cost of transportation of that particular article as distinguished from all others. Obviously such a reduction could not be shown to be unreasonable simply by proving that, if applied to all classes of freight, it would result in an unreasonably low rate."

[3] The further reason we understand to control the judge presiding in the Circuit Court in this case is the failure to show satisfactorily the real value of its property in Louisiana. The judge, speaking of the master's report, says:

"He fixes the value of the entire Texas & Pacific system at $93.385,341.32, based on the amount of mortgage bonds $54,621.531, and outstanding capital stock $38,763,810, and he approximates the value per mile at $50,610.07."

He also says that:

"Complainant has also failed to show its investment in Louisiana, except to fix the amount of its outstanding stock and bonds, which should not be taken as conclusive proof. As against this, there is evidence tending to show that complainant has constructed a branch railroad in Louisiana from Cypress to Shreveport, a distance of 81 miles, at an average cost of $20,405 per mile; and it is shown that its road is returned for taxation at $10,000 per mile for its main line and $5,000 per mile for its branches."

That the judge is right in holding that this is not a satisfactory way to reach the true value of railroad property seems to us clear. In Smyth v. Ames, 169 U. S. 466, 546, 18 Sup. Ct. 418, 434 (42 L. Ed. 819), in the opinion by Mr. Justice Harlan, the proper way of reaching the value of the property is stated as follows:

"We hold, however, that the basis of all calculations as to the reasonableness of rates to be charged by a corporation maintaining a highway under legislative sanction must be the fair value of the property being used by it for the convenience of the public. And, in order to ascertain that value, the original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stock, the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute, and the sum required to meet operating expenses are all matters for consideration, and are to be given such weight as may be just and right in each case. We do not say that there may not be other matters to be regarded in estimating the value of the property. What the company is entitled to ask is a fair return upon the value of that which it employs for the public convenience. On the other hand, what the public is entitled to demand is that no more be exacted from it for the use of a public highway than the services rendered by it are reasonably worth."

The master found the value of the entire railroad to be $93,385,-341.32, this estimate of the value of the railroad being based, as has been stated, on the amount of outstanding stock and bonds. Clearly this method of reaching the value of the railroad was unsatisfactory, and does not comply with the rule laid down in Smyth v. Ames, supra.

We think it unnecessary to consider some other questions discussed in the case because the judgment of the Circuit Court was evidently based upon the matters which have been referred to above; that is (1) the manifest error of the master in failing to allow any presumption in favor of the correctness of the commission's action, (2) the failure on the part of the railway company to show the cost of service in handling the particular commodity involved here, and (3) the action of the master in basing the value of the railway company's property in Louisiana on the amount of stock and bonds outstanding and therein failing to comply with the rule announced by the Supreme Court as to what should be considered in reaching the fair value of railroad property.

The first and third grounds just stated, upon which the court based its conclusion, are clearly correct, even if the second be somewhat doubtful on account of the difficulty of showing the cost of service as to a particular commodity. This justified the court in refusing to confirm the master's report, unless that report be so clearly correct that it should be sustained notwithstanding the errors of law just mentioned. We do not so consider it. On the contrary, starting out

with a presumption in favor of the correctness of the commission's action, we think the evidence wholly insufficient to overcome this presumption, and to show clearly and satisfactorily that the rates fixed would be confiscatory, or even unjust and unreasonable.

The judgment of the Circuit Court in this case is right, and the same is affirmed.