THOMPSON v. RAILROAD COMMISSION OF LOUISIANA et al.

(District Court, E. D. Louisiana, Baton Rouge Division. July 27, 1912.)

No. 77.

1. CARRIERS (§ 12*)—STATE REGULATION OF RATES—REVIEW BY COURTS—EVIDENCE.

Where a state Railroad Commission, in establishing rates, has made adequate inquiry, affording all parties in interest a chance to be heard, there is a presumption that the rates established are reasonable; and it is immaterial to their legality how the inquiry was initiated, or what motive actuated the Commission, so long as it had jurisdiction and did not exceed its authority.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–11, 15–20; Dec. Dig. § 12.*]

2. CARRIERS (§ 12*)—STATE REGULATION OF RATES—REASONABLENESS OF RATES.

An order of the Railroad Commission of Louisiana annulling a special rate given by a railroad to a single shipper of gravel from a point on

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

its line to New Orleans, and fixing the rate of charge to be made by such road on sand and gravel in car load lots, *held* reasonable and valid; but a further order, applying to all railroads in the state, and fixing the rate on car loads of gravel and sand at a larger sum per mile for long than for short hauls, and not shown to have been based on any hearing or investigation, *held* unreasonable and void.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–11, 15–20; Dec. Dig. § 12.*

Regulations of charges by carrier for long and short hauls, see note to Interstate Commerce Commission v. Southern Ry. Co., 60 C. C. A. 542.]

In Equity. Suit by John W. Thompson against the Railroad Commission of Louisiana and others. Decree rendered. ·

W. C. Marshall, of St. Louis, Mo., E. D. Saunders, of New Orleans, La., and T. Jones Cross, of Baton Rouge, La., for plaintiff.

W. M. Barrow, Asst. Atty. Gen., for defendants.

FOSTER, District Judge. This is a suit by John W. Thompson, a citizen of Missouri, against the Railroad Commission of Louisiana and the New Orleans, Texas & Mexico Railroad Company, Louisiana corporations, and against the Texas & Pacific Railway Company, a federal corporation, to have declared null and void three certain orders of the said Commission, and for an injunction to prevent the defendants from executing the said orders. The Commission joined issue, but the railroads merely entered their appearances through counsel and have taken no other part in the proceedings whatever.

The orders complained of are, in their material portions, as follows:

### (1206)

It is therefore ordered that the following be, and are hereby, established as reasonable rates on gravel and sand, car loads, straight or mixed, between points on the Texas & Pacific Railway in Louisiana:

Gravel or sand, car loads, minimum weight 80,000 pounds:

| Between points on the Texas & Pacific Railway in Louisiana. | Rates in Cents per 100 Pounds. |
|---|---|
| 25 miles and less. | 1 |
| 75 miles and over 25. | 1½ |
| 135 miles and over 75. | 2 |

All rates in conflict are hereby cancelled.

### (1216)

It is therefore ordered that the Texas & Pacific Railway Company be, and is hereby, commanded and required to further cease and desist from granting or allowing to J. W. Thompson & Co., or any other shipper, for or without a consideration, the exclusive right to erect elevators at, and use its loading racks, for shipping sand, gravel, or any other commodity, located at the end of Thompson's Spur, opposite Profit's Island, or elsewhere, and the exclusive right to use its terminals in the city of New Orleans, or elsewhere, for the purpose of loading and storing sand, gravel, or any other commodity; but all such facilities must be open to the use of all shippers and consignees under the same conditions.

### (1222)

It is therefore ordered that the following rates, which the Commission believes to be fair, reasonable, and just, be, and they are hereby, adopted

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for all railroads operating in the state of Louisiana, applying on sand and gravel, car loads, straight or mixed, minimum weight 80,000 pounds:

| Single Line Rates—Distances. | Rates in Cents per 100 Pounds. |
|---|---|
| 30 miles and less | 1½ |
| 75 miles and over 30 | 2 |
| 125 miles and over 75 | 2½ |
| 150 miles and over 125 | 3 |
| 175 miles and over 150 | 4 |
| 200 miles and over 175 | 5 |
| 225 miles and over 200 | 6 |
| 250 miles and over 225 | 6½ |
| 275 miles and over 250 | 7 |
| 300 miles and over 275 | 7½ |
| Over 300 miles | 8 |

Plaintiff contends, first, that the orders were not legally issued for technical reasons. The Commission is composed of three members. Their decisions are not required by law to be unanimous, and they have adopted rules authorizing a quorum to transact business. A quorum was present at each meeting at which any proceedings were had, at least regarding the said orders, and two commissioners concurred in their adoption. That is all that is necessary to make them legal and binding, if the Commission has otherwise acted within its jurisdiction and authority.

It appears from the undisputed allegations of complainant's bill, and from the evidence in the record, that Thompson has a contract to furnish gravel to the Texas & Pacific Railway for ballasting, and gets the gravel from Profit's Island, a gravel deposit in the Mississippi river, about 112 miles from New Orleans by rail, and assembled a plant, consisting of barges and dredges, and erected a wharf and an elevator at a point opposite Profit's Island. The Texas & Pacific built a bin for him at this point, which it leased to him for $100 a month, and extended a spur track, known as "Thompson's Spur," from its station at Chamberlin, a distance of about a mile and a half, and also permitted Thompson to erect storage bins at New Orleans on property owned, or at least claimed, by the railroad, for which it exacted no rental, and to which it erected approaches at its own expense, under an agreement that Thompson should be permitted to sell the gravel to others, but the railroad should have the preference. Order 1216 is aimed at the exclusive use of these bins and spur tracks. On the hearing of the case, counsel admitted its validity, and a decree was rendered to that effect. It therefore is no longer an issue in the case, but it may be necessary to further consider it in the determination of the other questions.

It is evident plaintiff's main concern is to perpetuate a rate of $12 per car, of unlimited capacity, from Chamberlin to New Orleans over the Texas & Pacific Railway, canceled by order No. 1206. He contends that the Commission was actuated by a desire to favor his competitors, and not to regulate rates; that the $12 rate is reasonable and just, especially in view of water competition; that the railroad receives fair compensation for the service and is entirely satisfied, and therefore the Commission could not abrogate it to put in a higher sched-

ule; and that he will be deprived of his property without due process of law if their orders are effective.

[1] The Railroad Commission of Louisiana has the authority, and it is its duty, to establish reasonable and just rates of transportation within the confines of the state. In doing so they may adopt a mileage, or any other recognized, form of schedule; they may order the carrier to desist from giving special privileges; and they may raise or lower existing rates as may be necessary, provided the rates adopted are reasonable and just. When they had made adequate inquiry, affording all parties in interest a chance to be heard, as was done in this case, there is a presumption that the rates established by them are just and reasonable. It is immaterial how the inquiry is initiated, or what motive actuates the Commission, so long as they have jurisdiction and do not exceed their authority. Texas & Pacific Railway Company v. Railroad Commission, 192 Fed. 280, 112 C. C. A. 538; Southern Pacific Company v. Interstate Commerce Commission, 219 U. S. 498, 31 Sup. Ct. 279, 55 L. Ed. 310.

[2] There is no actual existing water competition, although it is practicable at all seasons of the year by means of barges and towboats. There is great conflict of testimony as to its cost, but it seems reasonably certain that gravel in large quantities can be towed the year around for about 30 cents per cubic yard, not including the cost of unloading at New Orleans. There is no satisfactory evidence showing what this latter cost would be; but Thompson testifies that it costs him 30 cents per cubic yard to transport his gravel from Profit's Island the short distance across the river to his wharf and to load it into the cars. It does not appear what part of this charge should be allocated to the unloading of the barges; but the cost of loading them is not included, and the actual transportation cannot cost much. Therefore it would not seem unreasonable to estimate the unloading cost at 15 cents per cubic yard, which would make the water rate about 45 cents per cubic yard, unloaded at New Orleans. At $12 per car, of 80,000 pounds, the rail rate would be about 40 cents per cubic yard. Furthermore, any gravel intended for points outside of New Orleans could be more economically and conveniently hauled if received by rail, a matter of considerable importance.

It is apparent this $12 rate was intended as a special favor to Thompson, to keep his plant running during the time the railroad was unable to carry out their agreement to take practically his entire output, and in putting it in they considered it about cost. Under the stimulus of the rate, the traffic increased greatly, and Thompson built cars of his own of increased capacity, and it appears that the railroad is not now satisfied with the rate as a freight proposition, and they do not consider it pays the cost of hauling. Mr. Braggins, traffic manager of the Texas & Pacific, testifies that the average cost of the Texas & Pacific for the service is ½ cent per ton per mile, and that the railroad only gets a return of about ¼ to ⅕ of a cent per ton per mile. Judge Freeman, first vice president of the Texas & Pacific, states that the road could not make anything at the $12 rate if cars of unlimited capacity were used, and that as a freight proposition the road would

want 2 cents per 100 pounds. It is difficult to understand how complainant will be deprived of his property without due process of law if this rate is abolished. He does not claim a contract for it. His plant was installed and is necessary to carry out his contract with the Texas & Pacific, and at the increased rates, on his own testimony, he would have a substantial margin of profit on sales, at current prices, in New Orleans.

In my opinion, the Commission was right in annulling the $12 rate; and not only has the plaintiff failed to overcome the presumption in favor of the rates established by order 1206, but the preponderance of the evidence tends to maintain the finding of the Commissioners. I must therefore hold that order 1206 is legal and valid.

Order No. 1222, however, presents a different aspect. It is not shown that the Railroad Commission conducted any investigation before adopting it; therefore no presumption regarding it exists. In view of the rates established by order 1206, and from an analysis of order 1222 itself, I am inclined to consider the schedule unreasonable. For instance, the greater the distance the larger is the rate per mile. For the first 30 miles the rate is 1½ cents, which presumably includes switching and other expenses not again chargeable on a longer continuous haul. It drops to ½ cent for each of the next divisions of 45 and 50 miles, but then jumps up to double, or ½ cent, for the next 25 miles, and four times, or 1 cent, for each of the next three divisions of 25 miles, making the cost 3 cents for the last 75 miles of a journey of 220 miles, as against 2½ cents for the first 120. And then the rate per mile goes down again. Surely this appears, prima facie, to be illogical and unreasonable, and there is no evidence in the record on which I may base a different opinion.

There will be a decree in conformity with these views, the costs to be divided.