C. W. MURCHISON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 72347.    Promulgated February 14, 1935.

*L. E. Cahill, Esq.*, and *W. Leo Austin, Esq.*, for the petitioner.
*W. R. Lansford, Esq.*, and *O. W. Swecker, Esq.*, for the respondent.

OPINION.

TRAMMELL: This proceeding is for the redetermination of a deficiency in income tax for the year 1929 in the amount of $24,344.93. The petitioner originally assigned 11 errors, upon the basis of which he alleged that the respondent determined the deficiency in controversy. However, at the hearing petitioner waived his assignments of error numbered 2, 4, 6, 7, 8, 10, and 11, and respondent conceded assignment numbered 5, relating to unidentified bank deposits included in gross income in the amount of $3,534.18.

This leaves for consideration here three issues joined by respondent's denial of assignments one, three, and nine, namely, (1) whether respondent erred in excluding from gross income the sum of $602.76,

and in refusing to allow deductions from gross income in the sum of $4,871.43, alleged to represent income and expense deductions arising from the operation of a poultry business; (2) whether respondent erred in including in income for the taxable year alleged dividends received from the Murchison Oil Co., aggregating the sum of $122,248.24; and (3) whether respondent erred in failing to allow as a deduction alleged farm expenses in the sum of $5,954.62.

*Issue 1—Alleged loss from poultry business.*—Petitioner included in his return for 1929, as a part of gross income, the amount of $602.76, alleged to have been derived from the operation of a poultry business, and deducted as business expense incurred in that connection the amount of $4,871.43. Respondent eliminated the amount of $602.76 from gross income, and disallowed the deduction of $4,871.43 by including as additional income the net amount of $4,268.67. Petitioner now concedes that the amount of gross income derived from the poultry business during the taxable year was $702.28 instead of $602.76. In support of his action respondent asserts that petitioner has failed to show that the claimed expense was paid or incurred in the operation of a trade or business or in a transaction entered into for profit, and, further, that petitioner has failed to prove that the amount of the expenditures claimed as expense is correct or properly deductible.

The contention of the respondent last stated, we think, is well founded. In his return for the taxable year petitioner deducted from gross income the amount of $5,939.82, and in the attached schedule 18, explaining this item, appears the following: " Loss on poultry business $4,871.43." At the hearing petitioner offered in evidence as Exhibit 1 an analysis of certain personal accounts, the first of which is entitled " Statement of Farm Operations " and contains, among others, the item " Loss on Poultry venture $4,871.43."

Exhibit 1 was admitted for the sole purpose of establishing the figures, with the statement that oral testimony would be introduced to prove the correctness thereof. However, no such testimony was offered. Although petitioner stated that he had available at the hearing his books and records for 1929, no proof was offered to show the amount or nature of the several expenditures comprising the alleged loss of $4,871.43 other than the statement in petitioner's testimony that " The principal part was feed for the poultry." But this statement was coupled with the admission that he was " not conversant with just exactly what this loss was for."

The burden here is upon the petitioner to establish that the amount claimed constitutes an allowable deduction, and this, we think, he has wholly failed to do. For lack of proof to show error, respondent's action on this issue is affirmed, and it is unnecessary for us to determine whether petitioner was engaged in the poultry venture as

a trade or business, or whether it was a transaction entered into for profit.

*Issue 2—Whether withdrawals from corporation constituted informal dividends.*—Respondent determined that during the taxable year petitioner withdrew from the Murchison Oil Co. the net amount of $122,248.24, subject to surtax as dividends. In the deficiency letter respondent stated:

This item is a net withdrawal from the Murchison Oil Company and is treated as a dividend, fifty per cent thereof being income to the taxpayer and fifty per cent being income through the deceased wife to the three children of the taxpayer. Since the children are minors and elected not to file returns, this income is included in the income of this taxpayer, and the credit for dependents is allowed in the sum of $1,200.00.

At the hearing the parties stipulated that the net amount of withdrawals from the corporation during the taxable year was $115,170.37, instead of $122,248.24 as shown in the deficiency letter. The parties also filed the following stipulation of facts relating to issue 2:

1. That the Petitioner is a citizen of the United States residing at Dallas, Texas.

2. That prior to May 1, 1925, the Petitioner was a member of a partnership known as Murchison & Fain, and on that date owned a fourteen-thirty-seconds interest therein.

3. That Mrs. C. W. Murchison died intestate, leaving three children, on May 19, 1926.

4. That on May 1, 1925, there was organized a joint stock company, or trust estate, by name, Murchison-Fain Oil Company to which was transferred all the property and assets of the partnership of Murchison & Fain, and the partners thereof received in exchange for their interest in said partnership a proportionate number of shares of beneficial interest in the trust estate.

5. That on January 1, 1927, there was organized under the laws of the state of Texas a corporation by name, Murchison Oil Company, and a corporation by name, Fain-McGaha Oil Corporation.

6. That the Murchison-Fain Oil Company, the joint stock association or trust estate, transferred to these two corporations all of its property and assets in exchange for all the capital stock of the two newly organized corporations. The Murchison Oil Company received 7/16ths of the assets and property of the trust estate, and the Fain-McGaha Oil Corporation received 9/16ths thereof. Immediately after such transfer the trust estate distributed the capital stock of the Murchison Oil Company and Fain-McGaha Oil Corporation to its holders of beneficial interests in proportion to their respective interest in the trust estate, and in exchange therefor received their shares of beneficial interest in such trust estate.

7. That the transactions enumerated in the next preceding paragraph have been considered by the Murchison-Fain Oil Company, the trust estate, the Murchison Oil Company, the Fain-McGaha Oil Corporation, and the respondent as constituting non-taxable exchanges and reorganizations within the meaning of Section 203 of the Revenue Act of 1926.

8. That the aggregate net earnings of the Murchison-Fain Oil Company for the period from May 1, 1925 to December 31, 1925, was in the sum of $788,433.19, and that 7/16ths thereof amounts to $344,939.56.

9. That the aggregate net earnings of the Murchison-Fain Oil Company for the calendar year 1926 was in the sum of $290,906.09, and that 7/16ths thereof amounts to $127,271.34.

10. That the entire net value of the assets acquired by the Murchison Oil Company from the trust estate of Murchison-Fain Oil Company, including said earnings set forth in paragraphs 8 and 9 above, was entered in the books of the Murchison Oil Company as the cost or value of its capital stock.

11. That the Murchison-Fain Oil Company, the trust estate, filed income tax returns and was taxed as a corporation during the period of its existence.

12. That the cost to Petitioner on May 1, 1925, of his shares of beneficial interest in the trust estate of Murchison-Fain Company was in the amount of $93,928.43.

13. That during the year 1927, the Murchison Oil Company sustained a loss from operations in the sum of $49,232.03.

14. That during the year 1927, the Murchison Oil Company made a distribution to stockholders in the amount of $250,000.00. That in accordance with the agreement and understanding at the time of the distribution above referred to no part of the said $250,000.00 was paid in cash, but this amount was credited to the notes and accounts due by the Petitioner to the corporation.

15. That the Respondent has determined that the Murchison Oil Company realized a net income from operations during the year 1928 in the amount of $62,617.65.

16. That the Respondent has determined that the Murchison Oil Company realized a net income from operations during the year 1929 in the amount of $122,548.21.

Petitioner contends that the net amount of the withdrawals in question represents a loan, which he intends to repay to the corporation. Petitioner's wife died in 1926 and there has been no legal administration of her estate, except certain savings accounts handled through the courts by petitioner as guardian of his minor children.

Petitioner was the record owner, except as to qualifying shares, of all the capital stock of the Murchison Oil Co. from the date of its incorporation on January 1, 1927. Petitioner's wife, prior to her death in 1926, had a community interest in the joint stock association or trust estate, which was the predecessor of and transferred its assets to the Murchison Oil Co. in exchange for the shares of the latter's stock held by petitioner. All the assets of the oil company were acquired by petitioner during coverture.

Petitioner's withdrawals from the Murchison Oil Co. during 1927, 1928, and 1929 constituted, largely, personal expenses. No notes were given to the corporation representing such withdrawals, and there was no agreement to pay interest thereon. At the close of each of the following years the net debit balance of petitioner's open account with the Murchison Oil Co. was, 1927, $144,628.90; 1928, $238,165.75; 1929, $353,336.12; 1930, $409,541.84; 1931, $439,-404.64; 1932, $426,103.30; and at August 31, 1933, the debit balance of this account was $442,741.50. Some credits appear on this account by way of checks of petitioner, proceeds of notes due to petitioner,

salary credits and cash advanced by petitioner on behalf of the corporation. Likewise, charges appear for numerous items representing cash advances to various persons by the corporation on behalf of petitioner.

Petitioner testified that his account with the Murchison Oil Co. was considered as an asset of the corporation; that the balance of the account represented an obligation due from him, all of which he expected to repay; that he had other sources of income that would produce enough to pay off the account; and that he had actually repaid some of it. Petitioner did not state the amount repaid or when repaid, but it is apparent, from the facts set out above, that whatever amounts may have been repaid and credited to the account were immediately, or within the same year, again withdrawn from the corporation by petitioner, together with additional funds. The debit balance of the account was not reduced, but the net withdrawals steadily increased from year to year.

The record clearly indicates, we think, that the Murchison Oil Co. was operated by petitioner as a family corporation, through the instrumentality of which he carried on many of his business ventures. It was wholly under the control and domination of the petitioner.

In 1927 the corporation distributed a dividend of $250,000 out of the earnings of its predecessor, which was credited to petitioner's account and applied against his indebtedness to the corporation. No other dividend was formally declared by the corporation prior to the taxable year.

Disregarding the withdrawals of the petitioner, the corporation, at the close of 1929, had undistributed earnings of $358,144.73, including earnings of its predecessor. Excluding the earnings of its predecessor, the corporation had on hand at the close of the taxable year net distributable profits of its own in the amount of $135,-933.83.

Petitioner could have caused the corporation to declare a formal · dividend and to distribute these earnings to him, in which event the amount distributed would have been subject to surtax. Instead, the petitioner elected to withdraw the net earnings of the corporation to the extent of $115,170.37 as an alleged loan, without evidencing the obligation by promissory note, or paying interest thereon, and this amount not only has not been repaid to the corporation, but petitioner has consistently followed the same policy by increasing the amount of his withdrawals, at least down to August 31, 1933.

In the circumstances shown here, it is our opinion that the withdrawals by the petitioner must be treated as distributions of net profits of the corporation, taxable as dividends within the meaning

of that term as defined in section 115 (a) (b) of the Revenue Act of 1928.[1]

It is immaterial that a dividend was not formally declared by the corporation. *Spencer* v. *Lowe*, 198 Fed. 691; *Smith* v. *Moore*, 199 Fed. 689; *Chattanooga Sav. Bank* v. *Brewer*, 17 Fed. (2d) 79; *Hadley* v. *Commissioner*, 36 Fed. (2d) 543; *Christopher* v. *Burnet*, 55 Fed. (2d) 527.

In *L. J. Christopher*, 13 B. T. A. 729; affd., 55 Fed. (2d) 527, where we had before us a situation similar to the present case, we said:

The first question is whether these withdrawals by this petitioner fall within the term " distribution" as used in section 201. It is contended that this must be answered in the negative, since it appears that the California Company made no formal declarations of dividends and also because the various withdrawals were entered upon the books of the California Company as charges against this petitioner.

We are dealing with a one-man corporation, which so far as the record discloses, was conducted by L. J. Christopher as though it was an individual business. That portion of his personal account with the California Company which was introduced in evidence discloses that although his salary was in the amount of $1,000 per month, he did not withdraw any part of it. On the other hand, he withdrew money and other items whenever, it appears, he needed them and these withdrawals were credited by his salary and other items including Victory bonds. Another pertinent fact is that the California Company from the date of its organization to and including the year 1921, made no formal declaration of a single dividend. Since during all this time this petitioner was the owner of practically all the capital stock of the California Company and had absolute control, and since the only distribution of earnings made in these seven years was by reason of these withdrawals, we are clearly of the opinion that they were distributions made by the California Company as that term is used in section 201. * * * .

Section 201 of the Revenue Act of 1921, which governed the above cited decision, is, in all respects material here, the same as section 115 of the 1928 Act, quoted *supra*.

Where substantially all of the stock of a corporation is owned or controlled by one stockholder, he cannot escape tax by withdrawing, and thus having the benefit of the use of, the corporation's net earnings without the formal declaration of dividends, even though the amounts so withdrawn are charged against his account on the books of the corporation. *Chattanooga Sav. Bank* v. *Brewer*, *supra*; *Christopher* v. *Burnet*, *supra*. As we said in *E. T. Schuler*, 29

[1] SEC. 115.   DISTRIBUTION BY CORPORATIONS.

(a) *Definition of dividend.*—The term " dividend" when used in this title * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913

(b) *Source of distributions.*—For the purpose of this Act, every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. * * *

B. T. A. 415, 418, " Clearly the purpose of the statute above quoted (sec. 115, Revenue Act of 1928) was to make taxable all corporation profits earned since February 28, 1913, when permanently separated from surplus and delivered to a 'stockholder', whether legally distributed or not."

Finally, it is argued that the withdrawals in controversy did not constitute a distribution taxable as a dividend for the reason that the entire amount was received by petitioner, whereas he actually owned only one half of the stock and no distribution was made to the other stockholders. In disposing of the same contention in the *Schuler* case, *supra*, we expressed the opinion that the question of corporate regularity was of no importance to the petitioner's taxable status as the actual recipient of the disputed funds, if he did so receive and retain them. And in the case of *Christopher* v. *Burnet*, *supra*, where the taxpayer contended that the distribution was not a dividend because the other stockholders did not participate therein, the court held that since the other stockholders were not complaining, the taxpayer was not in a position to complain.

In our opinion the determination of the Commissioner, as set forth in his notice of deficiency, that all the withdrawals, which we find to be informal dividends, are taxable to the petitioner, is correct. We base our conclusions, however, on other grounds than those assigned by the Commissioner, and we do not put ourselves in the position of approving his reason for taxing it all to the petitioner.

The petitioner withdrew the money. There is no evidence that any of it was withdrawn by or for the children, or that they were advised of it. From all the record discloses, it was for his own personal use. Admittedly a formal dividend was declared in 1927 in the amount of $250,000 in cash, all of which was applied to petitioner's debts. Petitioner was in absolute control of the corporation, and treated it as if he were the sole stockholder in so far as withdrawals and dividends were concerned. He acted for his children as well as for himself, and we think under the circumstances it is immaterial that no formal declaration of dividends was made or that other stockholders did not participate. Even when a formal dividend was declared the petitioner received it all, as he did in this instance. The petitioner is in no position to complain that this was not a dividend because his children did not share.

On this issue, respondent's action is approved.

*Issue 3—Deduction for farm expenses.*—Petitioner claims that he is entitled to deduct from gross income for the taxable year the amount of $5,954.62, as farm expenses. Respondent contends that the evidence does not establish that petitioner in 1929 was operating a farm for profit, nor that he suffered a loss in the amount claimed. This issue is closely related to issue 1, and the status of the proof as

to both is the same. The documentary evidence offered by petitioner does not analyze the aggregate deduction, nor disclose the nature of the expenditures comprising the total. The testimony of the petitioner is also vague and wholly inadequate. With respect to this item, petitioner testified:

Q I notice on this exhibit, page 1 of exhibit 1, there is an expense item of some five thousand fifty-nine dollars and forty cents ($5,059.40) ; what does that include, Mr. Murchison?

A I imagine it covers buildings and labor for buildings and so forth for the operation of the farm.

Q Any labor that would appear in that would be for the construction of chicken buildings and so forth?

A I don't know as I recall—we did a great deal of that construction work there ourselves. I don't think that we had a great deal of it let by contract.

Not only has the petitioner failed to establish that the amount claimed represents deductible expense, but his testimony indicates that a substantial portion may have consisted of capital expenditures. For lack of evidence to show error, respondent's determination on this issue is approved.

*Judgment will be entered under Rule 50.*