Andrew M. Spheeris and Ismene A. Spheeris, Husband and Wife v. Commissioner.
Spheeris v. Commissioner
Docket No. 66548.
United States Tax Court
T.C. Memo 1959-225; 1959 Tax Ct. Memo LEXIS 23; 18 T.C.M. (CCH) 1093; T.C.M. (RIA) 59225; November 30, 1959
*23 Withdrawals made by petitioner from corporation controlled by petitioner and his family were distributions taxable as dividends rather than loans. Maurice Weinstein, Esq., 623 N. 2nd Street, Milwaukee, Wis. and Byron Axel, Esq., for the petitioners. Walter T. Hart, Esq., for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined deficiencies in income tax of petitioners as follows: Year
Amount
1953
$20,225.66
1954
5,592.76
1955
8,486.20
*24 The only issue presented is whether the amounts of $36,500, $5,000 and $19,500 received by petitioners from Milwaukee Towne Corporation during the taxable years 1953, 1954 and 1955, respectively, are taxable as dividends within the purview of section 115(a), I.R.C. 1939, and section 316(a), I.R.C. 1954. The question of whether medical expense deductions claimed by petitioner in the amounts of $16.33 and $111.24 for the years 1953 and 1954, respectively, were properly disallowed under the gross income limitations of section 23(x), I.R.C. 1939, and section 213(a), I.R.C. 1954, is wholly dependent upon the Rule 50 computation and will be automatically adjusted in accordance with the result of this case and with concessions made by the parties. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners Andrew M. Spheeris and Ismene A. Spheeris are husband and wife who resided in Wauwatosa, Wisconsin. They filed their joint income tax returns for 1953, 1954 and 1955 with the district director of internal revenue at Milwaukee, Wisconsin. Hereafter, unless otherwise indicated, petitioner has reference *25 to Andrew M. Spheeris. Petitioner is a college graduate and holds a law degree from the University of Wisconsin. After practicing law for approximately 1 year, he entered the Army in 1941. Upon separation from the Army in 1946 he held the rank of lieutenant colonel. Since 1946, petitioner has engaged in business activities, principally theater, television broadcasting, wholesale tobacco and real estate. The Miller Theater Corporation was organized under the laws of the State of Wisconsin in 1946. Its authorized capital stock issued and outstanding consisted of 500 shares which were divided equally among petitioner, his brother-in-law C. J. Papas, and his brother-in-law S. J. Papas. Shortly after the organization of the Miller Theater Corporation, petitioner and the other two stockholders, realizing that the success of this venture depended on obtaining first-run pictures, entered into negotiations with the United Artists Corporation, hereafter referred to as United Artists. These negotiations led to three contracts dated June 11, 1946. The first agreement provided: That the name of the Miller Theater Corporation be changed to the Milwaukee Towne Corporation, hereafter referred *26 to as Towne; that the capital stock be changed to consist of 400 shares of class A stock and 200 shares of class B stock; that United Artists be permitted to purchase the 200 shares of class B stock and that the 400 shares of class A stock be purchased by the original stockholders of the Miller Theater Corporation, namely, petitioner and his two brothers-in-law; and that all of the stockholders would make loans to Towne. The second agreement provided that United Artists would furnish pictures to Towne, and, in the event of its failure to do so, Towne could terminate the agreement and all of its obligations to United Artists would be canceled. The third agreement was a management agreement. On September 17, 1946, the parties entered into an escrow agreement which provided that the three previous agreements be deposited with an escrow agent. It also provided that if a court of competent jurisdiction should declare the agreements of June 11, 1946 unlawful, the escrow agent should mark them void. In the event that no such declaration was entered within 2 years, the escrow agent would be required to mail a copy of each of the three agreements to each party and the agreements would *27 become effective as of June 11, 1946. The authorized capital stock of Towne has been held since November 1946 as follows: Name
Class
No. of Shares
A. M. Spheeris
A
117 34/100
Mary J. Papas
A
77 22/100
C. J. Papas
A
78 22/100
S. J. Papas
A
78 22/100
John Papas
A
1
B. C. Dolar, Trustee
A
48
United Artists
B
198
Edward Raftery
B
1
Rud. Lohrenz
B
1
Paul Lazarus, Jr.
B
1
Ralph Cramblett
B
1
All of the class A stock is held by petitioner and his family except for the 48 shares listed to B. C. Dolar, Trustee, which are held in trust for Rud. Lohrenz, a representative of United Artists. There has not been a meeting of the board of directors or stockholders of Towne since September 3, 1948. The officers and directors holding office at that time have continued in office. Petitioner and members of the Papas family, constituting a majority of the directors and four out of seven of the officers, have operated Towne as a close family unit. Towne received loans from various sources during the period May 1, 1946 to August 1947. Included among the lenders were petitioner, his father-in-law John Papas, United Artists, and corporations owned *28 or controlled by members of the Spheeris and Papas families. All of the loans, which were repaid by April 30, 1952, were evidenced by promissory notes issued in favor of the respective lenders, bearing interest of 4 per cent per annum, which interest was in fact paid. Following is a table of the loans made to the company: Balance of Loan
Date of
Repay-
Lenders
Date
Amount
ment
John Papas
8/27/49
$59,842.99
4/30/52
Andrew M. Spheer-
is
12/29/48
22,833.33
4/30/52
United Artists
1/29/49
48,418.37
4/30/52
Harvard Theatre
Corp.
12/ 5/46
1,000.00
12/26/46
Woodstock Amuse-
ment Corp.
12/ 5/46
7,000.00
12/26/46
Terminal Restau-
rant
12/ /46
2,000.00
12/26/46
In 1948, the parties to the three agreements, except for United Artists, demanded that the escrow agent declare them void. United Artists, however, resisted this action. In view of the controversy, the escrow agent filed a suit in the United States District Court for the Northern District of Illinois requesting that the escrow agent be permitted to deliver the agreements to the clerk of the court and abide by the judgment of that court as to the respective rights of the *29 parties. This case was not decided until 1956. Krinsley v. United Artists Corporation, 235 F. 2d 253 (C.A. 7). In 1952, Towne received an award of approximately $1 million as treble damages in an antitrust action which had been brought against various companies in the film industry. Milwaukee Towne Corp. v. Loew's, Inc., 190 F. 2d 561 (C.A. 7). In 1954, Towne received approximately $300,000 in settlement of another such case. The accounting records of Towne, reflecting capital stock, reserve for contingencies and earned surplus for its fiscal years ending April 30, 1952, 1953, 1954, 1955 and 1956, are as follows: Reserve for
Fiscal Year
Common
Contin-
Earned
Ended 4/30
Stock
gencies
Surplus
1952
$30,000
$550,000
$ 86,032.47
1953
30,000
550,000
61,548.40
1954
30,000
550,000
270,796.36
1955
30,000
550,000
193,824.95
1956
30,000
550,000
208,589.65
Beginning in 1953 and through the years in issue, petitioner and other stockholders members of his family withdrew funds from Towne for personal use. No withdrawals were made on behalf of United Artists. Corporations with which petitioner and members of his *30 family were closely associated and in which they held controlling interest, also received funds from Towne during this period. These withdrawals were entered in the books of account of Towne as "Accounts Receivable-Miscellaneous." None of the withdrawals were evidenced by promissory notes or were secured by other form of collateral. There was no provision made for payment of interest to Towne and, in fact, no interest was ever paid. No date of repayment was agreed upon. The dates and amounts of petitioner's withdrawals of Towne's funds, as reflected in an account in petitioner's name and as carried on Towne's books, are as follows: Debit
Date
Debit
Credit
Balance
5/27/53
$ 5,000.00
$ 5,000.00
9/30/53
15,000.00
20,000.00
10/28/53
16,500.00
36,500.00
3/31/54
5,000.00
41,500.00
* 4/28/54
$23,547.27
17,952.73
4/28/54
25,000.00
42,952.73
3/30/55
9,000.00
51,952.73
4/27/55
5,000.00
56,952.73
5/24/55
3,000.00
59,952.73
10/31/55
2,500.00
62,452.73
5/23/56
5,000.00
57,452.73
11/30/57
1,500.00
58,952.73
*31 The $23,547.27 credit listed above is a book-entry transaction and does not report a cash payment. It was simply a transfer of the credit from the account of the estate of C. J. Papas to petitioner's account. On the same day the credit was passed to petitioner's account he withdrew an additional $25,000. The only other credit reducing petitioner's account was a $5,000 entry on May 23, 1956, which was subsequent to the time petitioner was apprised that the internal revenue audit, upon which determinations under consideration are based, had begun. On June 21, 1954, Towne served notice on United Artists that the contract to furnish pictures was being terminated. Three months later petitioner and other stockholders of his family group served notice on United Artists demanding that the latter return its 200 shares of class B stock, contending that because United Artists did not comply with the picture contract it was not entitled under the agreement to be a stockholder. Shortly after the receipt of these notices, United Artists commenced an action against Towne, its officers and directors, charging that petitioner and other officers had mismanaged the company, and complaining of loans *32 and advances made by Towne to petitioner and other stockholders of this majority group. In their answer filed in that proceeding on October 7, 1954, petitioner and others admitted receiving loans from Towne. No dividends were formally declared by Towne during this period. The status of United Artists as a stockholder was in doubt; also, the effect of the tax liability of the corporation by reason of the windfall damages of the antitrust suit was for a considerable period of time accompanied by uncertainty. Accordingly, upon the advice of counsel, the majority stockholders did not formally declare dividends. The withdrawals made by petitioner from Towne in 1953, 1954 and 1955 were out of earnings and profits of Towne accumulated after February 28, 1913, and were dividends as defined in section 115(a), I.R.C. 1939, and section 316(a), I.R.C. 1954. Petitioner, a member of a family group controlling Towne, effected withdrawals of Towne's funds in the amounts of $36,500, $5,000 and $19,500 in the respective years 1953, 1954 and 1955. Taking the position that these withdrawals were loans, petitioner did not report these sums as income on his returns for those *33 years. Respondent, however, determined that the withdrawals were in reality taxable dividends within the purview of section 115(a), I.R.C. 1939, and section 316(a), I.R.C. 1954, and included them in petitioner's income for the years in which the withdrawals were made. The above two sections define a dividend as any distribution made by a corporation to its shareholders (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year. The definition is broad in scope and, when coupled with the presumption that respondent's determination is correct, petitioner must establish affirmatively that the withdrawals were not dividends to fall without the scope of the statutory provision. W. T. Wilson, 10 T.C. 251, affd. 170 F.2d 423 (C.A. 9), certiorari denied 336 U.S. 909. Nevertheless, all withdrawals of corporate earnings by stockholders are not dividends, and petitioner here contends that his withdrawals were loans, but the burden is on him to prove it. Whether a withdrawal is a loan or a dividend is a factual question to be determined upon consideration of *34 all the facts and circumstances present in the case. Clark v. Commissioner, 266 F. 2d 698 (C.A. 9), affirming in part and reversing in part T.C. Memo. 1957-129 [16 TCM 555;]; Wiese v. Commissioner, 93 F. 2d 921 (C.A. 8), affirming 35 B.T.A. 701, certiorari denied 304 U.S. 562; Ben R. Meyer, 45 B.T.A. 228. The evidence indicates that petitioner and his brother-in-law S. J. Papas, who together controlled the corporation, withdrew considerable sums of money from Towne beginning in 1953, and continuing through the years in issue, for their personal use. These withdrawals were entered in the books of account of Towne as accounts receivable, and were reflected in its financial statements as loans. Petitioner and S. J. Papas testified that the payments were at all times considered as loans which were intended to be repaid. While such evidence tends to support petitioner's contention that the withdrawals were loans, the recording of withdrawals in accounts receivable and the self-serving testimony of the two stockholders who controlled the corporation are not conclusive, Regensburg v. Commissioner, 144 F. 2d 41 *35 (C.A. 2), affirming a Memorandum Opinion of this Court [1 TCM 925;] certiorari denied 323 U.S. 783; W. T. Wilson, supra; Ben R. Meyer, supra; C. W. Murchison, 32 B.T.A. 32, and are not too persuasive when viewed in the light of the other evidence and the situation as it existed when these withdrawals were made. None of the withdrawals by petitioner from Towne were evidenced by promissory notes, nor were they secured by collateral. No interest was charged and no date of repayment was fixed. Towne never declared and paid any dividends as such. Petitioner and his family simply withdrew funds from Towne when they needed it. The only credit to the accounts receivable of petitioner, prior to the time the audit leading up to this case was commenced, was an amount of $23,547.27 credited to the account on April 28, 1954, but this was simply a transfer of a credit from the account of the C. J. Papas estate. The only other credit to petitioner's account was for $5,000 in May 1956 after the audit was begun. Substantially the same thing can be said of the account of S. J. Papas. On the other hand, when petitioner and the other *36 stockholders loaned money to the corporation in prior years, the loans were evidenced by promissory notes and bore interest at 4 per cent per annum, which interest was in fact paid. Moreover, all the loans to Towne were repaid, whereas the accounts of petitioner and S. J. Papas reflect debit balances of approximately $59,000 and $90,500 in the latter part of 1957 and 1958, respectively. Petitioner points to the fact that the withdrawals were not in proportion to stockholdings as evidence of an intent to make loans rather than to pay dividends. We do not regard this as significant in view of the fact that petitioner and his family were in complete control of the affairs of the corporation and there was no one else except United Artists to object. United Artists and its representatives were the only other stockholders and they were apparently given no opportunity to demand an equal distribution proportionate to stockholdings. Further evidence of the complete control exercised by petitioner and his family over the funds of Towne and their use of those funds as they chose, is the fact that funds of Towne were also made available to other corporations owned by petitioner and family or *37 in which they had an interest. Although evidence that a stockholder is financially unable to repay withdrawals from a corporation may be given some weight in proving that the withdrawals were not intended to be loans, Regensburg v. Commissioner, supra, we can give little, if any, weight to the fact that petitioner here was financially able to repay these withdrawals as proof of his intention to repay in the light of the fact that he has not repaid the corporation despite his avowed ability to do so. Petitioner relies heavily on the fact that in his answer to the complaint filed by United Artists against petitioner and others in the United States District Court in Wisconsin in 1954, charging mismanagement of Towne and complaining of loans and advances made by Towne to petitioner and others, petitioner admitted receiving loans from Towne. Petitioner points out that this answer was filed prior to the beginning of this tax audit and voluntarily characterized the withdrawals as loans. However, in the situation in which petitioner found himself with relation to United Artists at the time his answer was filed, he could hardly have done otherwise. He could not deny that the *38 withdrawals had been made and he could not claim they were dividends because United Artists was a stockholder of Towne entitled to elect three directors and, on advice of counsel, Towne had held no meetings of its stockholders or directors at which dividends could have been declared. Furthermore, had the withdrawals been claimed to be dividends, United Artists would have been entitled to proportionate distributions, and its failure to receive them would probably have strengthened its case, so petitioner's admission in his answer that the withdrawals were loans also had a purpose. In fact, a study of the background leading up to the above-mentioned litigation with United Artists, as related in the two earlier cases mentioned in our findings of fact, Krinsley v. United Artists Corporation, supra, and Milwaukee Towne Corp. v. Loew's, Inc., supra, casts the situation with which we are here concerned in its true perspective. To summarize the situation, Towne brought an action against most of the large movie producers, except United Artists, charging violation of the antitrust laws and collected over a million dollars in damages in 1952. In the meantime, in 1948 *39 Towne had sought to cancel its agreements with United Artists under which United Artists agreed to supply Towne with first-run films, and United Artists acquired an interest in the stock of Towne. The escrow agent with whom these agreements were lodged brought an interpleader action in the district court to determine whether the agreements should be canceled. In that proceeding, Towne charged that the agreements had been obtained by United Artists by coercion. That case was finally decided against Towne in 1954 after the antitrust damage payments had been received by Towne. Thereafter United Artists filed the action above referred to seeking an accounting from petitioner and other officers of Towne. That case was still pending when this case was heard. Petitioner and his family were in complete control of Towne, a corporation which in 1953 had a large amount of cash in its bank account, apparently far in excess of its needs. Petitioner and his family were claiming ownership of most of the stock of Towne, but litigation involving ownership of some of the stock was then pending and dividends could not be declared. Petitioner and his family thereupon withdrew large sums from the corporation *40 for their own use, and for the use of other corporations in which they were interested, without any of the usual formalities followed in making bona fide loans. Under the circumstances, and in the light of all the evidence, we are not convinced that petitioner ever intended to repay the withdrawals here in question unless he chose or was forced to do so. Compare Ben R. Meyer, supra. Where a corporation is controlled by a stockholder or a small group of stockholders, we do not think they can escape tax by withdrawing, and thus having the benefit of the use of the corporation's net earnings without the formal declaration of dividends, even though the amounts so withdrawn are charged against his or their accounts on the books of the corporation. C. W. Murchison, supra.A consistent practice in a family corporation of withdrawing the corporation's earnings on open account, with only negligible repayments, is indicative of a method of dividend distribution. Regensburg v. Commissioner, supra. On all the facts we find that petitioner has failed to prove that these withdrawals were loans rather than dividends as defined in section 115(a), I.R. *41 C. 1939, and section 316(a), I.R.C. 1954. Accordingly, the withdrawals in question are taxable to petitioner as dividends. Decision will be entered under Rule 50. Footnotes
*. This represents a credit to petitioner and a charge to the estate of C. J. Papas, as shown on General Journal page 69, under date of April 28, 1954.↩